SAUNDERS *v.* CLOSS.

1. REPLEVIN—DISCONTINUANCE—STIPULATION.

  A stipulation by defendant in replevin with plaintiff that the
    latter may discontinue his suit upon turning over the
    property to such defendant will not bind co-defendants
    having adverse interests in the property.

2. SAME—POSSESSION UNDER MORTGAGE—DEFENSES.

  In replevin, the questions whether an assignment to plaintiff
    of a chattel mortgage under which he claims, and which,
    if unpaid, constitutes a first lien upon the property, was in
    fraud of the creditors of his assignor, the mortgagee, and
    whether a foreclosure of such mortgage by plaintiff was or
    was not valid, cannot be litigated by defendants, who took
    the property from plaintiff's possession, claiming neither as
    creditors of plaintiff nor of the mortgagee, but merely as
    owners of a subsequent mortgage; the only proper inquiry in
    such case being as to whether anything remained unpaid on
    plaintiff's mortgage, as the holder of such a mortgage in pos-
    session will be protected to the amount of his lien for any
    unpaid balance.

3. APPEAL—REVIEW.

  Error assigned upon instructions claimed to be unsupported
    by the evidence cannot be considered where the record does
    not purport to contain all of the testimony given at the trial.

Error to Wayne; Aldrich, J., presiding.    Submitted
November 3, 1897.    Decided May 18, 1898.

Replevin by George W. Saunders against John J. Closs
and George H. Fowler.    From a judgment for defendants,
plaintiff brings error.    Reversed.

*John Atkinson*, for appellant.

*Bowen, Douglas & Whiting* (*James H. Pound*, of
counsel), for appellee Fowler.

LONG, J.    This case was before this court at the April

term, 1895, in a *mandamus* proceeding, and is reported as *Fowler* v. *Wayne Circuit Judge*, 105 Mich. 90. The action is in replevin. It appears that March 10, 1888, the property in controversy was owned by Mary A. Closs and Mary H. Saunders, doing business as Closs & Co. The property consisted of horses, carriages, harnesses, furnishings, etc., being the stock in a livery stable owned by Closs & Co., and the business carried on by them. On the above date, Closs & Co. gave to Patrick Blake a chattel mortgage covering all of said property, for the sum of $1,000; the condition being that Closs & Co. should pay or cause to be paid to Blake the debt aforesaid, with interest, and should "discharge, take up, satisfy, and pay each and every note or obligation which the said Blake may hold against the said first parties, or hereafter make or sign for their accommodation, on or before the 10th day of March, 1889." On January 21, 1891, Blake assigned this mortgage to plaintiff, George W. Saunders. In the meantime, and on August 17, 1888, Closs & Co. gave a bill of sale of all this property, and conveyed the title, to Mary H. Saunders; the consideration being $3,500. To secure this payment, Mary H. Saunders gave a chattel mortgage upon the same property to Mary A. Closs for the sum of $3,500, payable in 35 equal monthly installments. Subsequently Mary H. Saunders conveyed the property to Saunders & Co., composed of Mary H. Saunders and William H. Saunders, Jr. Saunders & Co., on April 18, 1889, gave to Hincks & Johnson a chattel mortgage on all this property and other property for $3,600. This mortgage is, in terms, subject to the mortgage made by Mrs. Saunders to Mrs. Closs, but makes no reference to the Blake mortgage. The mortgage given by Mary H. Saunders to Mary A. Closs for $3,500 was assigned to Caleb H. Closs, the father-in-law of Mrs. Closs.

The situation in January, 1891, as claimed by plaintiff, was that there remained due on the Blake mortgage, which had been assigned to plaintiff, the sum of $425. Nothing had been paid on the Closs mortgage. The

Hincks & Johnson mortgage had been reduced to about $1,700. February 28, 1891, John J. Closs, son of Caleb H. Closs, claiming to have become assignee of the Closs mortgage, undertook to foreclose the said mortgage, and took the property from the plaintiff, who was in possession, and advertised it for sale. The notice of sale in this foreclosure proceeding was signed, "John J. Closs, Assignee of Mortgage, by George H. Fowler, His Agent." This sale was to take place March 7, 1891. Plaintiff, claiming to have acquired the title to the property, on that day brought replevin, and took all of it on his writ,— Snow, Brooke, and Haigh becoming sureties on his replevin bond; and, to secure them against loss, the property was turned over to them. In July, 1891, these sureties caused it to be returned to Closs; and he agreed to release them from all claims on their bond, and that the suit should be discontinued. The plaintiff was in Ohio, but his written assent to this arrangement was procured. This stipulation for surrender and settlement contained a proviso as follows: "It is understood that, if said Fowler should be found to have held said goods in any other capacity than as my [Closs'] agent, this release shall not affect any right that he may have." It appears that Hincks & Johnson had entered into an arrangement with John J. Closs to foreclose the Closs mortgage. Charles B. Lothrop was acting as attorney for John J. Closs; and Bowen, Douglas & Whiting, together with George H. Fowler, were acting as attorneys for Hincks & Johnson; and Mr. Fowler, as we have seen, had signed the notice of sale as agent for Closs. It was at this stage of the proceedings that the property was replevied by the plaintiff.

Before the property had been turned over to Closs, it appears that Atkinson, Carpenter, Brooke & Haigh, as attorneys for George W. Saunders, opened negotiations for a settlement of the matter; and the sureties on the bond to Closs made a written proposition, without conceding or denying the validity of the claims, to pay $1,600 in

cash, give a joint note for $1,700, with interest at 7 per cent., payable in sums of $100 or more at any time, the whole to be paid in one year, and to give a mortgage on all the property for $2,000, with interest at 7 per cent., payable in installments of $100 or more per month; payments to commence as soon as they had been reimbursed for advancements and liabilities assumed, but the whole to be paid in one year from September 10th. George W. Saunders, by his attorney, approved this agreement. Mr. Murray, of the firm of Hincks & Johnson, testified that he met these parties, and then told them that his firm had an interest in the property taken on the writ of replevin, by reason of the agreement made by his firm with John J. Closs; that he then showed them a copy of this agreement. This arrangement for the payment of the money and the giving of the note and mortgage seems not to have been completed, and the property was turned over to Closs. The attorneys for the sureties on the bond then wrote Bowen, Douglas & Whiting that the property had. been returned to Closs, and that he had released them from their obligations on the replevin bond. Haigh had requested Fowler to discontinue the replevin suit, and the sheriff to surrender the bond; and Fowler had declined to do so, on the ground that he held the property for the joint benefit of Closs and Hincks & Johnson, and he would look to the bond to make good his interest and the interest of Hincks & Johnson.

It may as well be stated here that the plaintiff claimed that a foreclosure had been had under the Blake mortgage, and the property bid in by the plaintiff, and that, even if the foreclosure of that mortgage was irregular, there was still due upon it the sum of $425 and interest. This claim was disputed, and defendants on the trial gave testimony tending to show that the Blake mortgage had been fully paid, and in fact that the assignment of that mortgage by Blake to the plaintiff was for the purpose of making a pretended foreclosure to cut off the other mortgages, by the plaintiff's bidding in the property in his own name. It

was also contended by defendants that the property had largely depreciated in value after it came into plaintiff's hands, and before it was surrendered to Closs. It also appears that on February 26, 1891, and before Closs took the property back from Saunders, a written agreement was entered into between Closs and Hincks & Johnson that Hincks & Johnson, who held the third mortgage, might foreclose his (Closs') mortgage in his name, purchase in the property under the foreclosure, and apply the proceeds—*First*, to the payment of any and all expenses connected with the foreclosure and of the action of replevin; *second*, to pay expenses of litigation growing out of the foreclosure; *third*, balance of proceeds to be equally divided. Hincks & Johnson had notice of the surrender of the property to Closs, and Closs offered, after receiving it, to divide with Hincks & Johnson. Closs foreclosed the mortgage, bidding in the property, and offered to divide it with Hincks & Johnson, or resell it and divide the proceeds.

When the replevin case was called, plaintiff asked to discontinue under the stipulation made with Closs. This was denied, and the cause came on for trial, resulting in a verdict by which the jury found that plaintiff was the general owner of the property, and that the defendants did not unlawfully detain it; and, the defendants having waived a return, they found the lien of Fowler, as agent for Hincks & Johnson, to be, with interest, $2,275. Judgment was entered upon this verdict, and plaintiff brings error.

1. It is contended by counsel for plaintiff that the settlement made by his sureties with Closs, and assented to by the plaintiff, is binding upon all the parties, and that his request made to discontinue the suit should have been granted. The argument is that this settlement was made in good faith, and that under it the plaintiff was induced to change his own position, in that he surrendered the rights which he had under the Blake mortgage, and at a later date, supposing the cause to be settled, bought the

property back from Closs, and paid him $1,250 therefor. It is also contended that there is nothing in the agreement between Closs and Hincks & Johnson which made it improper for the plaintiff or his sureties to deal with Closs, and surrender the property to him; that the most that can be claimed under this agreement is that it made Hincks & Johnson co-owners of the Closs mortgage; that the plaintiff could surrender the property to any of the owners; that the owner of an undivided share is, as to strangers, entitled to possession, and may even maintain replevin. It is also contended that Closs was the proper person to deal with; that Hincks & Johnson, having by their agreement obtained the right to foreclose the Closs mortgage, undertook to do it in Closs' name, caused it to be advertised for sale in his name by Mr. Fowler as his agent, and in this way asserted that the proceeding was his (Closs'), and that he had a right to control it; that, having asserted Closs' ownership, and the plaintiff having acted upon this assertion, and having commenced his action of replevin against Closs, and having thereafter settled with Closs, the defendants cannot now assert that some one else really owned the mortgage.

It is also contended that Hincks & Johnson, as well as Closs, are estopped from questioning this settlement; for, as soon as Hincks & Johnson received notice of it, they put themselves in negotiation with Closs and his attorney, Mr. Lothrop, and came to an understanding with them that the property should be sold under the Closs mortgage, and the proceeds divided in accordance with their agreement; that the property was sold, and bid in by Closs, who then offered to divide the proceeds or make a resale; that thus Hincks & Johnson had ample opportunity to protect themselves, but, instead of doing so, allowed Closs to go on and sell the property, and plaintiff to make a new investment.

The contention that the court should have granted the motion for a discontinuance of the suit, under these circumstances, cannot be sustained. As was held in *Fowler* v.

*Wayne Circuit Judge, supra,* the circuit court could not dispose of the case summarily upon this motion. That was the very point in controversy when the case was here on *mandamus,* and that ruling must be adhered to.

2. Counsel for plaintiff, by the same argument, contends that the court was in error in refusing to give his request in charge to the jury as follows:

"If, after the surrender of the property to Closs, the defendants had full opportunity to protect themselves by taking the property under the agreement with Closs, and neglected to do so, the jury should find for the plaintiff."

When the court's attention was called to this request, he remarked: "I think I have covered that in my general charge." In the general charge upon this subject, the court said:

"If the jury find from the evidence that the plaintiff, in ignorance of the agreement between Hincks & Johnson and Closs, and believing that the Closs mortgage was being foreclosed in Closs' right, although for the joint benefit of himself and Hincks & Johnson, entered into the arrangement for the discontinuance, and in pursuance of such arrangement waived his alleged right under the Blake mortgage, and surrendered up the property taken on the writ to Closs, and all this was done in good faith, and that Closs actually offered to carry out the agreement between himself and Hincks & Johnson so far as to the division of the property or its proceeds, and that the property had not deteriorated in value so far but that it was ample to satisfy both mortgages, then the plaintiff is entitled to have a judgment entered in accordance with the stipulation. If you believe from the evidence in this case that the plaintiff was not informed of the nature of the contract between Hincks & Johnson, and that he believed that Fowler was acting only as the agent of John J. Closs in the foreclosure of the Closs mortgage, and that his (Closs') actions and doings were such as to lead an ordinarily prudent person to believe,—that is, Fowler's actions and doings were such as to lead an ordinarily prudent person to so believe,—and that nothing was done by Hincks & Johnson, or their attorneys, that would ordinarily put a person in the position of the plaintiff or his attorneys upon inquiry as to any other rights which Fowler might have in the premises, and

that the plaintiff acted in good faith in attempting to make a settlement with John J. Closs, whom he believed to be the only party in interest, then the verdict of the jury should be in accordance with the stipulation entered into between the plaintiff and John J. Closs."

It will be seen that the court did not give the request in the words in which it was framed, but did so substantially, adding that if the plaintiff was ignorant of the agreement between Hincks & Johnson and Closs, and the property had not deteriorated in value so far but that it was ample to satisfy both mortgages, then plaintiff would be entitled to a judgment to be entered in accordance with the stipulation; that is, to have the case discontinued. We think the court was not in error in this addition to the charge as requested. There was some evidence in the case that the plaintiff had notice of the claim made by Hincks & Johnson before the property was turned back to Closs. The agreement itself to release the sureties of plaintiff contained a clause that has before been noticed; that is, that, if Fowler should be found to have held said goods in any other capacity than as agent for Closs, the release should not affect any rights he might have. No effort, as it appears, was made by plaintiff to settle with Fowler until after the property was returned to Closs. Defendants also offered proofs tending to show that the plaintiff and his sureties knew of the Hincks & Johnson and Closs agreement before this time. Testimony was also given by the defendants tending to show that the property, at the time of the seizure by plaintiff on his writ of replevin, was worth some $3,500, and that when it was turned back to Closs it had greatly depreciated in value. The court very properly left these questions to the jury, and we think it was not error to couple them with the above proposition made by counsel for plaintiff; for, if the plaintiff knew of the agreement between Closs and Hincks & Johnson, and it was a fact that the property had greatly depreciated in value at the time Closs took it back, then Hincks & Johnson, through Fowler, acting as their agent in the premises,

and who is made a party defendant in the replevin suit, had a right to show the value of their interest in the property; and that interest could not be cut off by the agreement made by Closs with the plaintiff's sureties, and Fowler, as defendant, would not be estopped from showing it.

3. It is contended that the plaintiff was entitled to judgment under the Blake mortgage; that there was $425 still due upon it. The Blake mortgage had been renewed from year to year, and had been foreclosed by plaintiff, and the property bid in by him. Counsel for plaintiff asked the court to instruct the jury that:

" The evidence is undisputed that the Blake mortgage had before that time been assigned by the mortgagee to the plaintiff, and by him foreclosed, and that at the foreclosure sale the property was bid in for the plaintiff. And if the jury believe that at that time there was a balance due on this mortgage of $425, and that the goods were sold for the amount of this balance, then the plaintiff got a title which was good as against the defendants; and, unless the settlement alleged is carried out, the plaintiff is entitled to a verdict."

This was refused, and the court charged the jury upon this subject as follows:

" If the jury believe that whatever money had been loaned by Patrick Blake in 1888, and whatever indorsements he had made prior to March 10, 1889, had been paid, then the said Blake mortgage became and was paid and void. If the jury believe from the evidence in this case—from the admissions of plaintiff or otherwise—that plaintiff never became the owner of the Blake mortgage, but that the transfer was a cover to defeat creditors, then it would not be legally enforceable in this case in plaintiff's behalf, as against the defendants. If the jury are not satisfied that there was any honest foreclosure of the Blake mortgage, then the plaintiff could not recover in this action under the claim of a foreclosure of such mortgage. The jury are the sole judges of the facts as to whether the sale from Blake to the plaintiff was of a valid mortgage, or one that had been paid, or whether it was assigned for anything but a cover, or whether it was fairly foreclosed, and whether there was a sale or not;

and, bearing upon those questions, they may consider the action of the elder William H. Saunders in renewing it after the claimed foreclosure. You may also consider in that connection the claim made by the plaintiff that it was for the purpose of estopping any possible question as to the legality of such foreclosure. * * * I will say that, generally, if the amount of money loaned or liability assumed by Patrick Blake prior to March 10, 1889, was paid prior to March 10, 1889, then the so-called Blake mortgage, so far as it affects this suit, was discharged; and the fact that the plaintiff may or may not have procured an assignment of it, and undertaken to foreclose it, should not be taken into consideration by you in arriving at a verdict, as a foreclosure under such circumstances could not affect the holders of the so-called Closs and Hincks & Johnson mortgage.

"The undisputed evidence shows that there was $1,000 loaned on the Blake mortgage at the time it was made, and that there were subsequent advances made by Mr. Blake to the mortgagors and those claiming under them, of considerable amount. The fact that the mortgagors and those claiming under them repaid Mr. Blake more than $1,000, so long as it was understood between them that such repayment should not cancel the mortgage, but that the balance due should remain secured by it, would not have the effect of discharging the mortgage, and in such case the plaintiff would be entitled to possession under the mortgage as against the Hincks & Johnson and Closs mortgages, whether the foreclosure was valid or not. I will further add, in relation to this Blake mortgage, that if, after this mortgage was made to Blake, they made payments upon that mortgage, and it was understood by them and by Mr. Blake that they made those payments to apply upon that mortgage, then every payment that was so made should be so applied; and, if there were sufficient of such payments to cancel that mortgage, then the mortgage would be canceled. But if, on the other hand, there was a running account between Blake and these parties, as well as this mortgage dealing between them, and he loaned them money at various times, and they repaid the money at various times, then their repayments of the money advanced, besides that mortgage, would have no effect upon the mortgage, and would be applied only as they themselves agreed upon."

It is contended that by this charge questions were

raised which were not in the case; that there was no testimony tending to show that the transfer from Blake to plaintiff was to defeat creditors, or to show any admissions of the plaintiff; that it was equally mischievous to leave it to the jury to say whether there was any honest foreclosure of the Blake mortgage. It is further contended that the assignment of the Blake mortgage could not have the effect to defeat creditors; that Blake's creditors were in no way concerned, and the transfer to plaintiff could not affect them injuriously; that the defendants were not creditors, either of plaintiff or Blake.

As we have seen, the Blake mortgage was given by Closs & Co., composed of Mary H. Saunders and Mary A. Closs. It was the first mortgage upon the property. It was transferred to plaintiff before he became the owner of the property, and, unless paid, was a valid lien in his hands for the amount remaining unpaid, and was entitled to priority over the other two mortgages. It was put on file in the proper office, and had been renewed as the statute requires. The only question upon it open for discussion was whether it had been paid; for, if the foreclosure was invalid, yet plaintiff would have the right to assert a lien thereunder, as such lien had been kept alive by the renewals. The court was therefore in error in submitting to the jury the question whether the transfer of the Blake mortgage was a cover to defeat creditors of Blake, or whether there was an honest foreclosure of it, so far as affecting the lien which plaintiff claimed thereunder; and he, being in possession of the property, would be protected to the amount of his lien.

4. It is also contended that defendants showed no right to recover under the Closs mortgage, for the reason that it had never been assigned to John J. Closs, one of the defendants here. The mortgage was given to Mary A. Closs, and by her assigned to Caleb H. Closs, and it remained unassigned by him up to March 23, 1892, when it was assigned to the plaintiff in consideration of the sum of $600. This assignment was made by J. J. Closs as

agent for Caleb H. Closs. On the trial, defendant Closs testified that there was no formal assignment of this mortgage by Caleb H. to him; but, as stated in the record, "he had a letter which was identified and marked, but not introduced in evidence." The court, however, charged the jury that:

"The claim of John J. Closs, as you will remember, to the right under this Closs mortgage, was under a verbal assignment. If John J. Closs was not authorized to foreclose the Closs mortgage in his own name, and if Fowler did not hold the property under the Hincks & Johnson mortgage, then your verdict will be for plaintiff."

The court's attention was then called to the fact that there was no claim of any verbal contract of assignment, and he said:

"What I mean is, it was not a formal assignment. If it was that which would amount to an assignment, and if he was appointed for the purpose of foreclosing it in his own name,—I will leave these questions to the jury."

We find no evidence whatever in the record that the mortgage was ever assigned to John J. Closs, or that he was ever authorized by Caleb H. to foreclose it. But, inasmuch as the record does not purport to contain all the evidence, we cannot say that no such testimony was given on the trial.

For the error pointed out, the judgment below must be reversed, and a new trial awarded.

The other Justices concurred.