WILLIAM H. HALL, APPELLANT, *v.* THE OGDEN CITY STREET RAILWAY COMPANY, RESPONDENT.

STREET RAILWAYS—COLLISION WITH TEAM—ACTION FOR INJURIES—NONSUIT—EVIDENCE—RATE OF SPEED—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.

1. Plaintiff emerged from an alley way, driving his team into an open street upon which defendant ran its car. Immediately after leaving the alley he looked in the direction from which the car came, and in consequence of trees and poles, saw none, and then approached the track. Before crossing it he made no particular effort to see whether a car was coming, and it was possible that the poles might have obstructed the view between him and the car. The car was running at the rate of 25 or 30 miles an hour, and no gong was sounded until just before the collision occurred in which plaintiff was injured. *Held,* that a nonsuit was improperly granted.

2. A street railway company has no superior right on a public street to that of the public at large, except the right to lay its track and operate its cars; and if it adopts a dangerous propelling power it must be held to a degree of care proportionate to the increase of danger to the public.

3. A street car has the right of way in case of meeting a person or vehicle, but each party, in order to avoid accident, must exercise ordinary care and such reasonable prudence as the surrounding circumstances require; and what may be considered ordinary care in one case may amount to culpable negligence in another. The existence of negligence in each case must depend on the circumstances peculiar to it.

4. It is the duty of a motorman to notice whether or not the track is clear when he approaches a public crossing, and to sound the gong as warning.

5. The ordinance showing the rate of speed a car was allowed to run was competent evidence, and should have been admitted, unless it was invalid, and did not apply to the case.

6. While some courts hold that where the speed is greater than that permitted by the ordinance, it is negligence *per se*, yet the better rule appears to be that it is a circumstance from which negligence may be inferred, and is always proper to be considered by the jury.

7. Persons traveling on a public street, along or across a street, are not held to the exercise of the same degree of care as when traveling along or upon or across an ordinary steam railroad.

8. When the injured party was negligent in the first instance, such negligence will not defeat his action, if it be shown that the defendant might have avoided the injury by the exercise of ordinary care and reasonable prudence.

9. As to whose negligence was the proximate cause of the accident is a question of fact for the jury.

(No. 661.   Decided April 1, 1896.   44 P. R. 1046.)

Appeal from the district court of the Fourth judicial district, Territory of Utah.   Hon. H. W. Smith, *Judge.*

This case came up for trial on the 14th day of April, 1895.   After plaintiff had introduced all his evidence, defendant's counsel moved for a nonsuit on the ground that the evidence showed that the plaintiff was guilty of contributory negligence, which caused the injury complained of.   The motion was granted and an exception taken.   Plaintiff had delivered a load of hay and returned to the public highway when the accident happened.   His evidence upon cross-examination was taken as the chief reason for granting a nonsuit and was as follows:

The shade trees are 16 feet from the gate.   The car that struck me was going south.   I looked before I got into the middle of the road, but not after I got to the middle of it.   I looked just after I passed the shade trees.   I was just barely striking the road.   There were electric poles there to obscure my vision.   There were teams in the road, I believe.   I think this would obstruct

the view some, but not a great sight; it would in a certain instance. It was just after I left the sidewalk that I looked north and south to see whether any car was coming or not. I did not look just as my team stepped on the track; I looked just before they got to the track. I saw none.

Just as I got from the sidewalk close by the shade trees I cast my eyes to the north and then to the south. I seen no cars and made up my mind that there was a clear way and drove right along. I was thinking of the car then; I turned slightly south. It might have been two rods from the time I got from the alley to the center of the track. Then I turned suddenly west, but did not right then look to see if the car was coming. Do not remember to have pulled out my handkerchief to wipe my face. Coming up to the track, I did not have my eyes towards the north then. My head was turned a little more to the south than to the north at that time. My little boy was on the wagon with me; had my lines in my hand; was looking at my team more than anything else when I was crossing the track. I did not see any cars; of course I was looking attending to my team. I looked ahead in the direction my team was traveling; before approaching the track to drive upon it I did not look either to the north or south. After crossing out of the alley on to the street I would have difficulty in seeing the car. I claim that I did look when I approached the street.

*Maloney & Perkins* and *Rhodes & Tait*, for appellant.

In Buswell on Personal Injuries, section 112, page 161, it is said: "The mere giving of signals required by law under such circumstances will not relieve the defendant corporation from the imputation of negligence, if in fact it was negligence in other respects, as by

running its trains at a dangerous rate of speed under the circumstances of the case."

It has been held that running trains at a greater rate of speed than allowed by statute or city ordinance is negligence *per se. Wall* v. *Delaware, L. & W. R. R.,* 54 Hun. 454; *Bitner* v. *Railway Co.,* 4 Utah 502; *Keim* v. *Union Railway & Transit Co.,* 92 Mo. 314; *Piper* v. *Milwaukee & St. P. R. R.,* 77 Wis., 247; *Gulf C. & S. F. Ry. Co.,* v. *Breitling,* 12 S. W. Rep. 1121.

In *Denver Tramway Co.* v. *Reid,* 35 Pac. Rep. 269, on page 274, the Colorado court said: "Aside from the deadly agent used as a motive power the charge of the court that the defendant was bound to use extraordinary care and would be liable for slight negligence is warranted by the authorities."

In *Riley* v. *Salt Lake Rapid Transit Co.,* 37 Pac. Rep. 681, 10 Utah 428, it is held that "in the absence of evidence to explain the excessive speed of the car at the time of the accident it was not error to charge that the running of the car at a rate of speed forbidden by ordinance was negligence *per se.*"

In this last case the city ordinance of Salt Lake City was introduced in evidence, sec. 5, ch. 12, page 88 of Salt Lake City ordinances is identical with sec. 5, ch. 23, page 176 of Ogden City ordinances in so far as the speed of cars is concerned. If the ordinance of Salt Lake City is binding on the street car companies and admissible in evidence, why is not the same ordinance in Ogden binding on respondent and admissible in evidence? Error is assigned on the ruling of the court sustaining defendant's motion to exclude the city ordinance. Abstract, 12.

But outside of any city ordinance it is clear that respondent was guilty of negligence in running its cars at such great speed.

In Buswell on Personal Injuries, page 180, it is said:

"It is ordinarily for the jury to determine under the circumstances of the case whether the road is negligent in running a train at a particular rate of speed. But, whether prohibited by statute or not, it is, as matter of law, negligent to run a train at a high rate of speed over a public crossing, or through a frequented street in a city or village," citing *St. Louis, V. & T. H. R. R.* v. *Faitz*, 23 Ill. App. 498; *Reilly* v. *Hannibal & E. R. R.*, 94 Mo. 600.

In *Everett* v. *Railway Co.*, 9 Utah 340, 349, says: "The obligation is mutual to use care to avoid the consequences of each other's negligence, the whole matter being for the determination of the jury, as to whose negligence and want of care constituted the proximate and direct cause of the injury." *Wagner* v. *Railway Co.*, 97 Mo. 512; (S. C. 10, S. W. Rep. 486); *Davies* v. *Mann*, 10 Mees. & W. 545; *Railroad Co.* v. *Still*, 19 Ill. 499; *Dunn* v. *R. R. Co.*, 58 Me. 187; *Coasting Co.* v. *Tolson*, 139 U. S. 551; *Creed* v. *R. R. Co.*, 86 Pa. St. 139. Appellant should not have been nonsuited. *Leak* v. *R. R. Co.*, 9 Utah 250, 251; *Railway Co.* v. *Ives*, 144 U. S. 417; (S. C., 12 Sup. Ct. Rep. 679).

In *Wilson* v. *Cunningham*, 3 Cal. 241, it was held that where the streets of a city are diverted from their ordinary and legitimate use by special license (as in the case at bar) * * * and in the pursuit of a business which involves constant risk and danger, he is bound, in the exercise of such right, to use extraordinary care.

*Evans & Rogers*, for respondent.

Cited: *Ehrisman* v. *East, etc., City Ry. Co.*, 150 Pa. St. 180; *Carson* v. *Federal Street Ry.*, 147 Pa. St. 219; s. c., 23 Atl. Rep. 369; *Ward* v. *Rochester Elec. Ry. Co.*, 17 N. Y. Sup. 427; *Marsland* v. *Pittsburg Ry. Co.*, 123 Pa. St. 438; s. c., 7 Atl. Rep. 624; *Hamilton* v. *Third Ave. Ry. Co.*, 26 N. Y. Sup. 754; *Davidson* v. *Denver Tramway Co.*, 25 Pac. Rep. 920, (Colo.); *The Chicago, etc., Ry. Co.* v. *Houston,*

95 U. S. 697; *Schofield* v. *Chicago, etc., Ry. Co.,* 114 U. S. 615; Booth on Street Ry. Law, Sec. 5316; *Kelly, etc.,* v. *Hendries,* 26 Mich. 255; *Elliott, etc.,* v. *Chicago, etc., Ry. Co.,* 150 U. S. 245; *Boerth* v. *West Side Ry. Co.,* 58 N. W. Rep. 376, (Wis.); *Blakeslee* v. *Consolidated St. Ry. Co.,* 63 N. W. 401, (Mich.); *Philadelphia Ry. Co.* v. *Peebles,* 67 Federal Rep. 591; *The Chicago, etc., Ry. Co.* v. *Bert,* 69 Ill. 389; *The Penn. Ry. Co.* v. *Bell,* 122 Pa. St. 58; s. c., 15 Atl. Rep. 561; Cooley on Torts, page 817; *Glasscock, etc.,* v. *Central Pac. Ry.,* 73 Cal. 137; Patterson Ry. Accident Law, sec. 157.

In the case of *Ehrisman* v. *East, etc., City Ry. Co.* the facts are almost identical with those in the case at bar. That was a case where the injured party was driving his team down the street in the same direction as the car, and when about fifty or sixty feet from the track, he looked out, but did not see the car coming. He then drove his horse obliquely across the track and without looking again before crossing it.

When seen by the motorman in charge of the car his wagon was moving in the same direction and the accident was caused by turning his horse directly across the track in front of the car. The supreme court of Pennsylvania, in speaking of this question, used the following very appopriate language: "When, therefore, a citizen attempts to cross such track, it is his duty when he reaches it to look in both directions for an approaching car. It very rarely, if it ever, happens that a street is so obstructed that a car may not be seen as the citizen approaches the track.

It is his duty to look out at this point, and, if there is an obstruction, to listen, and his negligence to do so is negligence *per se.* This is an unbending rule, to be observed at all times and under all circumstances. * *

\* If the citizen looks just before he crosses he avoids all danger of accident."

Counsel contend that it is negligence to run cars at a high rate of speed. We admit that under some circumstances this might be the case.

We insist, however, that there is nothing in the record tending to show that the car which caused the injury was run at any other than a usual rate of speed. The proof merely showing that the car, at the point of injury, was run at the rate of twenty-five or thirty miles an hour, without showing any other fact, such as that the speed was unusually high, is not proof of a high or dangerous rate of speed. In the absence of such proof it is clear, both upon principle and authority, that the company was not negligent by running its cars at such a rate of speed. *Calhoun* v. *Ry. Co.*, 61 Am. & Eng. Ry. Cases, 364; *Elliott* v. *Ry.*, 95 U S. *supra*; Patterson Railway Accident Law, sec. 157 and cases cited.

The next point noticed by counsel in his brief is that to run a train at a rate of speed in excess of that allowed by the city ordinance is evidence of negligence. We frankly admit that this is the settled law. This point, however, does not arise in this case. The ordinance which appellant's counsel sought to introduce in the court below, reads as follows: "The tracks of all railroads hereinafter constructed shall be laid in the center of the street, unless otherwise directed by the city council, and all trains running therein are hereby prohibited to run at a greater speed than eight miles per hour." The latter clause, relating to the speed, clearly has reference to steam railroads, running trains within the limits of the city. Counsel well know that the franchise under which respondent operates its street railway, does not place any limit upon the speed of its cars.

BARTCH, J.:

This suit was brought in consequence of alleged care-lessness of the defendant company, which resulted in personal injury to the plaintiff. When the evidence had been introduced, the court granted a motion for a non-suit on the ground that the plaintiff was guilty of con-tibutory negligence, and afterwards denied a motion for a new trial. These rulings are assigned as error on appeal. At the time of the accident the defendant was operating a street car railway in the city of Ogden, and the injury was caused on its line on Washington avenue where it intersects with First street. The plaintiff had delivered a load of hay to one Anderson, and on his return passed through a private alley, just north of First street, over the sidewalk, which is one rod wide, onto said avenue, which is eight rods wide, and then, turning slightly to the south, continued across the eastern por-tion of said avenue in a westerly direction, and turned his horses to cross the defendant's track, when the col-lision occurred. Extending north from First street there is a row of shade trees at the edge of the sidewalk on the avenue, and electric poles about 100 feet apart, on the middle thereof, and the car track is on the west side of the electric poles. These trees and poles obstruct, from the sidewalk, the view to the north, where the car in ques-tion came from, and just after the plaintiff, who was driving slowly, and sitting on the front end of his hay rack on the wagon, had left the sidewalk, he looked to the north and south for a car, without seeing any, but did not look immediately before attempting to cross. When near the track, the electric poles somewhat obstructed the view of the plaintiff to see the car. There is some conflict in the evidence as to how far the car was from the wagon when the gong was sounded. The plaintiff

testified that he heard no gong, and had no knowledge of the car's approach until it struck him. The witness Anderson, who was in the best position to see, said the car was not more than from 5 to 8 feet from plaintiff, and two other witnesses that it was not more than 50 or 60 feet from him when the gong sounded. The car at the time was running at the rate of 25 to 30 miles per hour, and, no brakes being set, or any effort made to stop, it struck with full force, demolishing the wagon and hay rack, killing one horse and severely and permanently injuring the plaintiff. The wagon and team were dragged about 50 feet after being struck. The accident happened at the crossing on First street, which, however, is not a laid-out street west of the avenue, but it is open, and the public cross through there, it being a short way to Harrisville avenue. The railway track, to the north of the place of the accident, is straight, with no obstruction to the view execept the electric poles. The plaintiff knew that the cars were running regularly about every 15 minutes. The accident happened on the 10th of August, 1893, at 5:30 p. m., it being a calm and clear day. Such is the testimony, in substance, disclosed by the record. The plaintiff also offered in evidence a city ordinance, to show the rate of speed which was allowed on railroads in Ogden City; but this was rejected by the court on the ground that it was incompetent, irrelevant, and immaterial. Counsel for the appellant insist that the court erred in rejecting the ordinance, and we are inclined to sustain their contention. It was admissible, unless for some special reason it was either invalid or did not apply to this case. No such reason being shown, it ought to have been admitted.

The main question in this case arises on the action of the court in granting the nonsuit. Assuming the evidence to be true,—which we must for the purpose of a

nonsuit,—the question is, did it present such a case as justified the court in determining as a matter of law that the appellant could not recover? To determine this, it becomes important to advert to the relative rights of the public and street railway companies to the use of the streets in a city. When streets in a city or village have been regularly platted and dedicated for public use, all persons have equal rights thereon, so far as public travel is concerned. Originally, such streets were not designed for street railways, but they were confined to the right of public travel in the ordinary modes. Courts, however, have become much more lax in the enforcement of strict technical rules as to the use of streets, through advanced civilization, enlightened public policy, and a desire to subserve the public welfare, and now permit a reasonable portion of the streets to be used for street railways, holding that such is a proper use. Nevertheless, this confers upon a street railway company no superior right to that of the public at large, except the right to lay its track and operate its cars, which must be done with as little inconvenience to ordinary travel as practicable. Nor does its franchise, apart from this, confer upon it any greater or superior right to the use of the street than is enjoyed by any one of the citizens. The right to lay its track and operate its cars includes within it no exclusive right to the use of any particular portion of the street, not even that whereon the tack is laid. Nor does it relieve the company from its obligations to exercise due care in the operation of its road, so as to avoid injury to persons traveling upon the street, or in the rightful use of the same, or from liability for accidents, which are the proximate result of the want of proper care, skill, or vigilance on the part of its agents. The duty of the company to recognize the rights of persons in the lawful use of the streets is imperative, and if

it adopts a propelling power which increases the hazards of such persons it must be held to a degree of care proportionate to the increase of danger because of such propelling power. This is so because, the more dangerous the appliance, the more likely it is for casualties to happen, and consequently, the greater the degree of care which must necessarily be exercised in order to avoid their occurrence. As the company, however, is held to a degree of care commensurate with the circumstances of each particular case, so, likewise, is the citizen, for he cannot recklessly place himself in the way of danger, and then complain of injury. He is bound equally with the company to the exercise of a proper degree of care, skill, and vigilance. He has no exclusive right to any particular portion of the street, any more than has the railway company. Ordinarily, he may walk or drive upon the track or cross it, but because cars are designed to run only upon the track, he cannot heedlessly obstruct its passage without assuming the risk of injuries for which he may have no redress. The car has the right of way in case of meeting a person or vehicle on the track, but each party, in order to avoid accident, is bound to exercise ordinary care, and such reasonable prudence and precaution, as the surrounding circumstances may require. These circumstances necessarily vary in each particular case in their relation to each other, and the conduct of the parties must be considered in the light of their surroundings at the particular time when they were called upon to act. What may be considered ordinary care in one case may, under the circumstances of another, amount to culpable negligence. So an act which would have been viewed with indifference when the street cars were drawn by horses at such low rate of speed as to be easily controlled might be gross negligence when the car is propelled by electric power at a much higher rate of

speed. Mr. Justice Lamar, delivering the opinion of the court in *Railway Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. 679, said: "There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care under any. and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence" *Shea* v. *Railroad Co*, 44 Cal. 414; *Nickols* v. *Jones* (Pa. Sup ), 31 Atl. 329; *Dooly Block* v *Salt Lake Rapid Transit Co.*, 9 Utah 31, 33 Pac. 229; *Railway Co.* v. *McKewen* (Md.), 31 Atl. 797; *Railway Co.* v. *Whitcomb*, 66 Fed. 915. From a consideration of these principles it is evident that the existence of negligence in each case must depend upon the circumstances peculiar to it, and which surrounded the parties at the time of the ocurrence, on which the controversy is based. Where negligence does appear, there are generally some prominent facts which show a want of due regard for the safety of others, or an absence of proper care and precaution, so as to avoid the casualty, or incaution or lack of skill in the use of dangerous instrumentalities in places obviously perilous, or the doing of an act which duty had forbidden, or the omission to do one which duty had commanded to be done. If, in any case, these facts, or any one of them, appear, and in addition thereto it is shown that, in consequence thereof, injury has been inflicted upon a person who was himself in the exercise of ordinary care and reasonable prudence, and not so connected with the author of the injury as to have assumed the hazard, then it is a case of negligence, for which an action will lie.

Applying this test to the case at bar, it follows conclusively, from the facts above stated, as shown by the plaintiff's testimony, that the railway company was guilty of negligence on the occasion of the accident. The car was propelled by an electric motor, at the rate of 25 to 30 miles an hour, on a public highway in the city of Ogden; but, notwithstanding such high rate of speed, and the fact that the car was approaching a public crossing, no gong was sounded until about the time of the collision; nor were the brakes applied, nor any attempt made to stop the car, nor any proper warning given. Under these conditions and circumstances, how can it be successfully contended that the railroad company was not derelict in its duty? It is apparent from the evidence that, if the car had been run at a reasonable rate of speed, the accident could have been averted; but, even at the speed the car was running, the motorman, by exercise of ordinary care, could have averted it. The track was straight for a long distance north of the crossing in question, and there was nothing to obstruct his view thereon. If he saw the plaintiff in his perilous position in time to stop the car and avoid the injury, he was bound to do so. If he did not see him, then he was equally guilty of negligence, because it was his duty to look and ascertain whether or not the track was clear, when he was approaching a public crossing. So when he was approaching such crossing it was his duty to sound the gong as warning. If, as is contended by counsel for the respondent, the plaintiff was driving alongside the track, with his back towards the car, it was especially the duty of the motorman to give warning, and keep his car under control. He had no right to presume that the plaintiff would not cross the track at such crossing. The contention of counsel for the respondent that it was the duty of the plaintiff to look out to see that the way was clear

before crossing the track applies with equal force to the
motorman operating the car. Such duty, in law, was
imposed on both parties. The plaintiff, having looked
for a car after he left the sidewalk, and having seen none,
may have been lulled into a sense of security that there
was no danger, and he may not have been as vigilant as
he ought to have been, but that did not relieve the defend-
ant from performing his duty when approaching the
crossing. "It is the duty of a street railway company to
exercise ordinary care and diligence to prevent injury to
persons lawfully traveling the street or road occupied by
its tracks. It is bound to know that the public may use
the entire road or street when not in actual use by its
cars, and it must employ reasonable means to prevent
injury to those who it knows may rightfully so use the
road or street; for this knowledge requires that it shall
exercise care and diligence to make it reasonably safe to
travel the highway in the ordinary mode." Elliott, Roads
& S. p. 585; Busw. Pers. Inj. § 123; *Swain* v. *Railroad Co.*,
93 Cal. 179, 28 Pac. 829; *Piper* v. *Railroad Co.*, 77 Wis. 247,
46 N. W. 165; *Traction Co.* v. *Appel* (Md.), 31 Atl. 964;
*Railway Co.* v. *Woodlock* (Tex. Civ App.), 29 S. W. 817;
*Robinson* v. *Railroad Co.*, 48 Cal. 409. The city ordinance
which the plaintiff attempted to introduce in evidence
limited the rate of speed on railroads in Ogden City to
eight miles an hour, but, whether or not the ordinance
applied to this case, and regardless of any ordinance lim-
iting the rate of speed, a railroad company has no right
to run its cars at such a high rate of speed, over a public
crossing, or through a frequented street in a city, as will
endanger public safety, and put those who are rightfully
in the use of the street to extra hazards. *Railway Co.* v.
*Ives, supra; Thompson* v. *Railway Co.*, 110 N. Y. 636, 17 N.
E. 690; *Railroad Co.* v. *Perkins*, 125 Ill. 127, 17 N. E. 1; *L.
& N. R. Co.* v. *Com.*, 13 Bush, 388.

Some courts hold that where the speed is greater than that permitted by the ordinance, it is negligence *per se*; but the better rule, and the one sustained by the weight of authority, apears to be that it is a circumstance from which negligence may be inferred, and is always proper to be considered by the jury in determining the question whether or not the railway company was guilty of negligence. Busw. Pers. Inj. § 122; *Riley* v. *Rapid Transit Co.*, 10 Utah 428, 37 Pac. 681; *Railway Co.* v. *Ives, supra*; *Railway Co.* v. *Breitling* (Tex. Sup.), 12 S. W. 1121; *Tramway Co.* v. *Reid* (Colo. App.), 35 Pac. 269. The conclusion is irresistible that on the question of negligence of the defendant there was ample evidence to be presented to the jury, but counsel for the respondent insist that the appellant was guilty of such contributory negligence as precludes his recovery. It is urged in support of this contention that, had the appellant looked to the north before going upon the track, he would have observed the car, and then could have stopped his horses until it had passed, and thus have avoided the injury; and that, having failed in this, he was the author of his own misfortune. It is not clear from the evidence that if he had looked north immediately before going upon the track, he would have obseved the car. In fact it is shown that from his position, just before his horses stepped upon the track, the electric poles formed some obstruction to the view, and it cannot be presumed that he was reckless as to his own safety. It would be more reasonable to infer from the evidence in the record that he felt secure because of the observation he had made, when in a position where his view was unobstructed. He was lawfully upon the street, and had a right to cross the track, and, attempting to do so at a public crossing, after he had looked and seen no car, had a right to assume that the railway company

13 UTAH—17

would give proper warning of the approach of a car, and not run him down recklessly. Persons traveling on a public street, along or across a street railway track, are not held to the exercise of the same degree of care and precaution as they are when traveling along or upon or across an ordinary steam railroad; and this is so because the people have the right to travel on every portion of the highway, while they have usually no such right on a steam railroad track, and because street cars can be brought under control much more readily than can the cumbersome railroad trains. Elliott, Roads & S., pp. 589, 590; Beach, Contrib. Neg. § 89. Even if the appellant drove upon the track incautiously, still the company was bound to the exercise of ordinary care and vigilance to avoid the accident. It could not recklessly and without proper care run its car, and then, when injury resulted to a person, because of its recklessness, escape liability, on the ground that such person was negligent in the first instance. The rule of law is no longer open to doubt that where the injured party was negligent, in the first instance, such negligence will not defeat his action if it be shown that the defendant might have avoided the injury by the exercise of ordinary care and reasonable prudence. Both parties have mutual obligations to exercise due care and vigilance to avoid the consequences of their negligence, and the question as to whether negligence was the proximate and direct cause of the accident is one of fact for the jury to determine under the circumstances of each particular case. Shear. & R. Neg. § 99; *Everett* v. *Railway Co.*, 9 Utah 340, 34 Pac. 289; *Leak* v. *Railway Co.*, 9 Utah 246, 33 Pac. 1045; *Railway Co.* v. *Ives, supra*; *Coasting Co.* v. *Tolson*, 139 U. S. 551, 11 Sup. Ct. 653; *McClain* v. *Railroad Co.*, 116 N. Y. 459, 22 N. E. 1062; *Davies* v. *Mann*, 10 Mees. & W. 545; *Little* v. *Railroad Co.*, 88 Wis. 402, 60 N. W. 705; *Wines* v. *Railway Co.*,

9 Utah 228, 33 Pac. 1042; *Jeffs* v. *Railway Co.*, 9 Utah 374, 35 Pac. 505; *Railway Co.* v. *McKewen* (Md.), 31 Atl. 797; Beach, Contib. Neg. § 5.

It is evident that the record in this case does not present such a state of facts that all reasonable men must arrive at the same conclusion from a consideration of them, and yet such must be the facts proven before the question of negligence becomes one of law for the court. Nor are there such prominent and decisive facts proven concerning the appellant's conduct on the occasion of the accident as to warrant the court in pronouncing it such contributory negligence that in law he is not entitled to recover. Where the propriety and reasonableness of the acts and conduct of the parties at the time of the accident can be properly or correctly determined only by a consideration of all the circumstances connected with and surrounding the occurrence, it is within the province of the jury to determine whether there was negligence, and, if there was, whose negligence was the proximate cause of the injury. The subject of nonsuit was considered in the case of *Lowe* v. *Salt Lake City*, 13 Utah 91, 44 Pac. 1050. Our views expressed on this subject in that case apply with equal force to this. See, also, *Dederichs* v. *Railway Co.*, 13 Utah 34.

The other case referred to in the record, which was brought for damages to personal property, and tried before a justice of the peace, was afterwards consolidated with this, and the two were then tried together in the district court, and heard together on appeal, both controversies resulting from the same accident, and affecting the same parties. Therefore our intention is that this opinion shall apply to both cases. It is manifest that the trial court erred in making the orders in question. This cause must therefore be reversed, with costs, and

remanded, with directions to the court below to set aside the erroneous orders, and grant a new trial. It is so ordered.

ZANE, C. J., and MINER, J., concur.