PHINEAS JEWETT, PLAINTIFF IN ERROR, v. THE PATERSON RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued March 23, 1898—Decided November 14, 1898.

The plaintiff, at a little after nine o'clock on a dark night, was approaching on foot a trolley road having a single track, which he intended to cross. His line of approach was northwesterly and diagonal to the

track   When he had somewhat more than fifty feet to walk before crossing the track he saw a car somewhat more than two hundred and fifty feet south of the place of crossing.   He testified that when from four to six feet distant from the track he turned his head, looked for the car south along the track seventy-five or one hundred feet and did not see it; that he was then going diagonally across; that the first thing he knew the car was on him and knocked him down, and that he was about the middle of the track when he was struck.   The track to the south was straight for more than two hundred and fifty feet and the view of it was unobstructed.   It is to be assumed that the plaintiff moved at the rate of an ordinary walk.   Three witnesses observed and testified as to the car's rate of speed.   *Held*, that facts within the plaintiff's knowledge and observation made it probable that the car, coming from a quarter toward which his back was partly turned, would be dangerously near to him before he got across the track ; that it was therefore his duty to look for the car before he attempted to cross ; that the car, moving at any rate of speed that is attributable to it under the evidence, must have been so near to the plaintiff when he looked for it before going on the track that if he had not looked carelessly he would have seen it and have been warned of imminent danger ; that his failure to receive warning was therefore due to his own negligence, and that the nonsuit was properly granted.

On error to the Passaic Circuit Court.

For the plaintiff in error, *George P. Rust* and *John B. Humphreys*.

For the defendant in error, *Eugene Stevenson*.

The opinion of the court was delivered by

ADAMS, J.   The plaintiff was knocked down and hurt by one of defendant's cars and sued for damages, but was non-suited because it appeared to the trial judge that the plaintiff's own negligence contributed to his injury.

The correctness of this ruling is now under review.

The material facts are these : At a little after nine o'clock on the evening of May 26th, 1892, the plaintiff, then sixty-three years old, left his place of business in Passaic to go on foot to his home in that city.   His place of business was east of the line of the defendant's electric railway, his home was

west of that line. He therefore had to cross the line of that road. Before he reached it he had to cross also the line of the New York, Lake Erie and Western railroad, a steam road. At the locality where the accident happened the steam road and the electric road are parallel, running northerly and southerly, and at right angles or nearly at right angles to the line of a street, which on the east of said steam and electric roads is called Washington place and on the west of said roads is called Bloomfield avenue. The steam road, which here has three tracks, occupies longitudinally the central part of Main avenue. The electric road, which at the time of the accident consisted of one track, ran longitudinally along that part of Main avenue that lies west of the steam road. Consequently the plaintiff, walking westerly on a line with the south sidewalk of Washington place, would first cross three tracks of the steam road, and then come to the single track of the electric road. The track of the steam road that he first crossed is that used by trains coming from the direction of New York City, and will be called the westbound track; the next one is that used by trains moving toward New York City, and will be called the eastbound track; the third is a freight track of that road. When the plaintiff was crossing the westbound and eastbound tracks of the steam road he was engaged in conversation with a Mr. Patton, who was going in the same direction. A through express train was approaching at high speed on the eastbound track, and the plaintiff hurried across the westbound and eastbound tracks, and then, as soon as he had crossed the eastbound or middle track, diverged from his companion, turning towards the northwest, and proceeded upon some diagonal line in the general direction of the northwest corner of Main avenue and Bloomfield avenue. Such a diagonal line would pass from southeast to northwest over a part of Main avenue and would intersect, first, the freight track of the steam road, and secondly, the track of the electric road. Upon a line measured at right angles to the tracks it was eight feet from the westerly rail of the westbound track of the steam road to the

easterly rail of the eastbound track, and twelve feet from the westerly rail of the eastbound or middle track to the easterly rail of the freight track. The gauge of the steam road was about four feet eight inches. From the westerly rail of the freight track to the easterly rail of the electric road was sixteen feet. The gauge of the electric road was about four feet. In the western division of Main street, south of Bloomfield avenue, there was a switch track of the electric road, lying west of the main track of that road. Southbound electric cars ran on the switch track to let northbound cars pass them. The northern end of the switch was two hundred and fifty feet south of the southerly line of Bloomfield avenue. There was an electric light on the southeast corner of Washington place and Main avenue. A drug store on the northwest corner of Bloomfield avenue and Main avenue was lit up. As the plaintiff was crossing the westbound track of the steam road, which was the most easterly of the three tracks of that road, and the one that he first came to, he saw, although it was a dark night, a car of the electric road in the neighborhood of the switch. He thought that it was on the main track of the electric road, and that it was standing still. It might be a northbound car, and be about to move. He could assume that, if it was a northbound car, and if it moved, it would not advance toward him at a rate of speed incompatible with his own safety, if he acted prudently in the exercise of his lawful right to use the public highway. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605 ; *Consolidated Traction Co.* v. *Lambertson,* 30 *Id.* 297. If the plaintiff had kept straight ahead from the place where he was when he first saw the car, instead of taking a diagonal course after crossing the eastbound track of the steam road, he would have cleared the westerly rail of the electric road at the end of about fifty-two feet. His diagonal course made the distance longer, how much longer the case does not show, because it does not certainly appear just what line he took after crossing the eastbound track, or whether he adhered thereafter to one line. His course would bring him upon the track of the electric

road not at a crossing, as in *Traction Co.* v. *Scott*, 29 *Vroom* 682, but at a point between two crossings, and would turn his back partly towards the car. The plaintiff had somewhat more than fifty feet to walk; the car had somewhat more than two hundred and fifty feet to run. Manifestly it was within the range of ordinary probability that these two moving bodies would about meet. The situation therefore called for caution. That the plaintiff so regarded it is plain from what he did. He attempted to be cautious. Unfortunately for himself he performed this duty imperfectly. He testified on direct examination as follows:

"I started for the corner; I looked up and down and did not see any car; about seventy-five or one hundred feet, I should say, I looked and saw no car; I went on, and the first thing I knew the car was on me and knocked me down."

The following is an extract from his cross-examination:

"*Q.* When you stepped onto the tracks of the electric railway, did you look back to see whether there was a car approaching?

"*A.* Just before, I did.

"*Q.* Tell us exactly; how far were you from the rail of the street car tracks when you looked?

"*A.* About four feet; four or six feet.

"*Q.* You were then going diagonally across?

"*A.* Yes, sir.

"*Q.* Did you turn fully around to look down the track?

"*A.* I turned around the same as I always do, six times a day; the same as I have always done.

"*Q.* You did that?

"*A.* I turned my head the same as anybody would look to see if anything was coming.

"*Q.* How far did you look?

"*A.* Seventy-five or one hundred feet, I should judge.

"*Q.* That is merely your estimate now?

"*A.* Yes, sir.

"*Q.* Did you look over your shoulder; you didn't turn right about and look down?

"*A.* No, sir.

"*Q.* You didn't?

"*A.* No, sir.

"*Q.* Didn't it occur to you that you ought to make careful observation, after you had seen the car down there on the track?

"*A.* No, sir; I had time enough to go across, half a dozen times. * * *

"*Q.* I understood you to say that you had reached a point between the two rails of the Paterson Railway Company, when you were struck by the car?

"*A.* About the middle."

It is to be assumed that the plaintiff moved at the rate of an ordinary walk. Several witnesses were questioned as to the rate of the car's speed. The plaintiff was asked on direct examination, "Do you know how fast the car was going?" and answered, "I did not have time to see how fast anything was going." Three of the plaintiff's witnesses testified on this point. Frederick Lance, a bystander, thought that the speed was about twelve to fifteen miles an hour. Daniel Harrigan, another bystander, said that the speed was "just usual; a good rate of going." James W. Haven, the motorman, in answer to the question, "At what rate did you proceed?" said, "At a pretty good speed; not as fast as we had been running; I didn't put the full power on."

From the case above detailed the conclusion results that the car, moving at any rate of speed that the jury could have attributed to it under the evidence, must have been so near to the plaintiff, when he looked for it before going on the track, that if he had not looked carelessly he would have seen it and have been warned of imminent danger. His failure to see it, and so to receive warning, was therefore due to his own negligence. The result will not be altered if it be supposed that the plaintiff was mistaken in saying that he looked for the car when he was close to the track. Under the circumstances not to look was negligence. In either view the nonsuit was right.

There is nothing about the act of pedestrianism on a public highway to take the case of a traveler on foot, who is injured by collision with any vehicle, out of the usual rule that a plaintiff's contributory negligence is ground for nonsuit. This is true whether the vehicle does or does not move on rails. In *Barker* v. *Savage*, 45 *N. Y.* 191, 196, the Court of Appeals held that a plaintiff, a pedestrian who was run over by a cart at a street crossing, should have been nonsuited for contributory negligence. *Belton* v. *Baxter*, 54 *Id.* 245, is a similar case. In *Chisholm* v. *Knickerbocker Ice Co.*, 1 *N. Y. Supp.* 743, the plaintiff, a pedestrian, was run down by an ice-wagon. A judgment of nonsuit was sustained. In *Sheets* v. *Connolly Railway Co.*, 25 *Vroom* 518, contributory negligence was imputed to a child ten years old, who, while crossing a street on foot, was knocked down by the horses attached to a car. This case was cited with approval by Mr. Justice Gummere, in the opinion of this court, in *North Hudson County Railway Co.* v. *Flanagan*, 28 *Id.* 696. In *McClain* v. *Brooklyn City Railroad Co.*, 116 *N. Y.* 459, Mr. Justice Bradley well defines the reciprocal rights and obligations of travelers and persons in charge of vehicles moving along a highway on rails. The language of the court had immediate reference to a collision between a pedestrian and a horse attached to a car, and needs no qualification in a case where the speed of the vehicle is not shown to have been excessive. *Consolidated Traction Co.* v. *Lambertson*, 30 *Vroom* 297. The following quotation is an extract from the opinion in the McClain case (at *pp.* 464, 465): "The circumstances, as represented by the evidence on the part of the plaintiff, warranted the conclusion that by the exercise of the reasonable care which it was the duty of the defendant's driver to observe, the injury would have been avoided. But this fault, on the part of the defendant, did not charge it with liability, unless the plaintiff was free from negligence contributing to the calamity. * * * As a street car must continue on the rails of its track, persons otherwise traveling on the street are required to use care to keep out of its way, yet for their

protection the duty rests upon the driver to .keep the horses reasonably within his control upon the public streets. If by the exercise of reasonable care the plaintiff could have seen the approaching car, and ought to have apprehended the danger of the situation, he was chargeable with negligence, for he was not at liberty to take even doubtful chances of the consequences of crossing the track in the face of danger, or in reliance upon the successful attempt of the driver to slack the speed of his horses."

It is peculiarly true of controversies like this that the defendant's right to a nonsuit depends on the precise facts of each case. An alteration in the conditions may change the result. The case of *Consolidated Traction Co.* v. *Glynn*, 30 *Vroom* 432, illustrates this and may be usefully compared with the case in hand. There the plaintiff assumed, after waiting two or three seconds, that he could walk from the curb across the track, a distance shown by the record to be eighteen feet and a half, before a trolley car that he had observed approaching him should run a distance of about three hundred feet. Acting upon this assumption, he advanced without again looking toward the car and was struck by it. The trial judge refused to nonsuit for contributory negligence and was sustained by this court. From the facts disclosed in that case it was not clear that the plaintiff's assumption was unreasonable. The question therefore went to the jury. If we vary the elements of the Glynn case by progressively diminishing the distance that the car had to run and increasing the distance that the man had to walk, we first approach and then cross the line that separates alleged contributory negligence that is debatable by a jury from alleged contributory negligence that is manifest to a judge. For reasons already stated, we think that the situation presented is of the latter class. There is a further difference between the two cases that, upon the authority of *West Jersey Railroad Co.* v. *Ewan*, 26 *Vroom* 574, serves to distinguish them, namely, that in the Glynn case the plaintiff was overtaken by a danger he did not apprehend, whereas in the present case the plaintiff real-

ized the necessity of precaution and yet exercised it inadequately. As was said by Mr. Justice Dixon in the case just cited, "there is a substantial difference between being surprised by an unforeseen peril and being overtaken by one apprehended and recklessly incurred."

It may be said that this view of the subject puts cases like this upon a sliding scale—leaves a trial judge without any simple, convenient rule of universal application other than the general proposition that travelers on a public highway must exercise due care, and obliges him to decide a motion to nonsuit upon his own judgment as to the particular facts in proof. This is true, but it is no novelty. That it is true results from the nature of the case. Where rights are relative, as they are in a public highway, the rule that governs them must be flexible enough to fit the changes of the relation. It is not a case for a rigid formula.

The judgment of nonsuit is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, LUDLOW, ADAMS, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH. 8.

*For reversal*—DEPUE, GUMMERE, LIPPINCOTT, VAN SYCKEL, BOGERT. 5.