## PRATT v. UTAH LIGHT & RAILWAY COMPANY.

No. 2148. Decided February 11, 1911 (113 Pac. 1032).

1. STREET RAILROADS — CONTRIBUTORY NEGLIGENCE OF PERSON INJURED—CROSSING IN FRONT OF APPROACHING CAR—DUTY TO USE SENSES AND FACULTIES. Where a person attempts to cross a street car track on a dark night at a point which is not a public crossing, nor a place where people are accustomed to cross or to use the track, and where there is nothing to distract or confuse his attention, and exercises no care whatever before going upon the track and makes no use of his senses and faculties to ascertain whether a car is approaching and to avoid a collision, such person is guilty of contributory negligence as a matter of law, and cannot recover for resulting injuries. (Page 508.)

2. STREET RAILROADS—ACTIONS FOR INJURIES—QUESTIONS FOR JURY—PERSONS CROSSING TRACK—PROXIMATE CAUSE. Where the facts in an action for personal injuries against a street railroad are

undisputed, and the inferences therefrom make it self-evident to all reasonable minds that the only acts of negligence complained of were not the proximate cause of the injury, it is the duty of the court to instruct a verdict for the defendant. (Page 510.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Annie E. Pratt against the Utah Light & Railway Company.

Judgment for defendant.   Plaintiff appeals.

AFFIRMED.

*Evans & Evans* for appellant.

*P. L. Williams, Geo. H. Smith* and *F. K. Nebeker* for respondent.

FRICK, C. J.

Appellant was injured by being struck by a street car while she was in the act of crossing one of respondent's tracks, and she brought this action to recover damages.

In her complaint she alleged that the respondent was negligent (1) because the car with which appellant collided was not equipped with "a sufficient guard or fender," and that the same was not maintained in good repair; (2) that the car was not provided with "a good and sufficient headlight;" and (3) that respondent "carelessly and negligently ran and operated the car, by reason of which appellant was struck." Respondent denied the acts of negligence, and pleaded negligence on the part of appellant, which it is alleged was the . proximate cause of the collision and injury.

Upon these issues the undisputed facts developed at the trial are substantially as follows: On the 19th day of August, 1908, at about eight-thirty or nearly nine o'clock p. m., the night being cloudy and dark, the appellant was walking

south on the east side of Seventh East Street. When she arrived at a point a little south of Thirteenth South Street, outside of the southern city limits of Salt Lake City (near Wandemere Park, a summer resort, to the entrance of which place she intended to go to meet her son by appointment), she left the sidewalk on the east side of said street, and started to go either directly or perhaps somewhat diagonally in a southwesterly direction across Seventh East Street toward the entrance to Wandemere Park on said street. While in the act of crossing the street, she met with an accident, and upon that subject she testified as follows: "Q. Do you remember going into the street? A. Yes, sir. Q. Now, do you recollect anything after that? A. No, sir. Q. For how long? A. Well, I would think two weeks, up in the hospital." This is all she testified on direct examination with respect to how the accident occurred, or with regard to what she saw or what happened to her. On cross-examination she said that she was somewhat familiar with the street, and that she noticed that there were to tracks at the point she was about to cross them, and that she distinctly remembered crossing one of the tracks, but remembered no more. At this point in the proceedings the record reads as follows: "Q. When you walked across (the street), did you look to see whether any car was coming in either direction? A. I am sure I don't know. I generally did. Q. I know; but did you on this night? A. I say I don't remember that. Q. Don't remember looking in either direction? A. No, sir. . . . Q. Of course, if you had looked and you had seen it (the car), you would have remembered, wouldn't you? A. I think I would. . . . Q. You say you don't remember whether you looked in either direction at this particular time. Did you? A. No, sir; I don't think I did." She further said that she knew that the street in which she was struck by the car was straight north and south from south of Thirteenth South Street nearly to Third South Street, or for a distance of over ten long city blocks, and that just before the accident she did not hear any car approach, although her hearing was not defective. A witness

named De Gray, who testified on behalf of appellant, in substance said that just preceding the accident he was walking south on the west side of Seventh East Street and had just passed over Thirteenth South Street when he saw the car which struck appellant come from the north; that he had gone some sixty or seventy feet south of Thirteenth South Street when the car came up to and passed him going south. He says: "All at once after the car passed me, I notice an object in front of the car which afterwards proved to be Mrs. Pratt (the appellant);" that he "couldn't say whether she was crossing, standing, going, or coming, . . . because it all happened so quickly, and the light, I suppose didn't throw sufficient to show which way she was facing. Q. Dim light? A. Well, not necessarily dim, I suppose, for a headlight, but it wasn't one of those searchlights." He further says that the headlight was an "ordinary headlight, such as you see in common use." The witness further testified that, when he saw appellant on the track ahead of the car, it had passed south of where he was walking, so that it immediately passed between him and appellant, but he thinks he saw that she was struck by the car because she seemed to fall. With respect to the speed, he said, "I should judge they were going moderately," and that the car was quickly or suddenly stopped. As soon as the car stopped, he immediately went in front of it, and found the appellant under the forward part of the car under the fender. She had not been touched by the wheels of the car, but she was unconscious.

Mr. Davidson, another witness called on behalf of appellant, testified: That he with others was riding on the front platform of the car in question at the time of the accident; that it was dark and cloudy, and that he was standing by the motorman; that the rays of the headlight were thrown twenty-five or thirty feet ahead of the car; that he saw a lady on the track in front of the car. "Q. Did you see her as soon as the rays of light were thrown upon her? A. Well, I should judge so. She got just in the vision of the flash of it once. . . . Q. Now, was the motorman

looking in that direction? A. Yes, sir. Q. What did he do,
if anything? A. Sounded his gong, shut off his power—
well, everything he could do, it seemed to me, and shouted.
Q. With respect to the time he saw her you may state how
soon it was that the brakes were shut down. A. Well, it
seemed to me the same time I saw it. Q. How quick did
this all happen? A. Well, in time I can't say. All at once,
all came at once." He also said that the car had slowed
down on Thirteenth South Street just before the accident,
but had gained headway again, and at the time appellant
was first seen on the track the car was running "about me-
dium speed;" that, when he saw her on the track, it all hap-
pened so suddenly that he "couldn't say whether she was
walking or standing still." At the point the accident oc-
curred the street was not artificially lighted.

Another witness, named Rose, in substance, testified that
at the time of the accident he was standing at the gates of the
park; that he observed the car coming south. He further
said: "I suppose it (the car) had gone maybe a block or
more, a city block;" that he noticed that the car had stopped;
that he noticed the headlight on the car; that the head-
light was "the kind ordinarily used by the street
railway company, only at times it was very dim;"
that he did not think it would throw its rays "to
exceed twenty feet;" that he was "possibly a half or three-
quarters of a block away" from where the appellant was
struck.

There was other evidence corroborative of the foregoing,
but none in conflict with it. It also appeared that inside of
the park proper, and at considerable distance from where
the accident occurred, there were music and other noises
that usually occur at such amusement places where a large
crowd is assembled, as was the case on the evening in ques-
tion. The point where appellant attempted to cross the
tracks, and where she was struck, is about five hundred feet
north from the entrance or gates of the park. Nothing is
made to appear with regard to the character of the place,
only that there was no public crossing at that point; that is,

that the collision occurred at a point which was some distance from a street or other public crossing. There is no evidence with regard to the guard or fender other than that the car was equipped with the ordinary fender in use by the respondent; that this consisted of a hood or apron extending across the front of the car, and a guard or fender held up from the rails by some device under the front part of the car, and was in front of the forward wheels; that, when an object came in contact with the hood with any considerable force, the impact would cause the fender to be released from the aforesaid device, and it would fall and rest upon the rails, and in that way was intended to prevent objects which were of considerable size, including persons from passing under the wheels; that the motorman could also cause the fender to drop down on the rails by stepping on a bolt which for the purpose was conveniently placed on the platform of the car. There is no direct evidence whether the fender dropped or not. In view that it passed over appellant, the inference is that it did not drop, at least not in time to prevent appellant from passing under the wheels. As the car was stopped, however, before the wheels touched her, the fact that the fender did not drop is not material.

There was also evidence respecting the injuries appellant sustained, but it is not deemed material to state the extent of her injuries on this appeal.

Upon substantially the foregoing evidence the appellant rested her case. Respondent also rested without offering any evidence, and moved the court to direct the jury to return a verdict for it upon the following grounds: (1) That appellant had produced no evidence that the respondent had failed to equip its car wtih a sufficient guard or fender, or had failed to keep the same in good and sufficient repair; (2) that there was no evidence that respondent had failed to provide for and keep on said car a sufficient headlight; (3) that there was no evidence that respondent had been negligent in any way in operating said car, or that it was being operated at a high or negligent rate of speed at the time of or immediately preceding the accident; and (4) that the un-

disputed evidence shows that appellant was herself guilty of contributory negligence which caused or approximately contributed to the accident and consequent injury. The court granted the motion, directed the jury to return a verdict for the respondent, no cause of action, which was accordingly done, and a judgment entered on the verdict, from which this appeal is prosecuted.

Counsel for appellant insists that the trial court erred in directing a verdict. In their brief counsel state the questions for consideration by us as follows: "Two questions are presented for review: First. Did the defendant as a matter of law exercise due care? Second. If the defendant as a matter of law did not exercise due care, was the plaintiff as a matter of law guilty of contributory negligence?" Counsel for respondent agree with the foregoing statement, but contend that both questions must be answered in the affirmative, while appellant's counsel insist that they must be answered in the negative.

In view of the undisputed facts and circumstances when applied to the grounds of negligence relied on by appellant, were there any facts, or inference from other facts, upon which a jury might have predicated a finding of negligence against respondent? Stating the proposition in another form, are the undisputed facts of such a nature that fair-minded men would be justified in arriving at different conclusions with respect to whether the respondent was guilty of some act of negligence or of some act of omission described in the complaint, and which was the proximate cause of the collision and consequent injury to appellant? Counsel for appellant contend that the question whether the headlight was sufficient or not was a question of fact for the jury, and hence the trial court erred in directing a verdict on this ground. They further insist that "the question of a sufficient guard is likewise a question of fact. It was alleged and proved that the fender and guard failed to operate." The foregoing are the only grounds of negligence claimed, and are the only reasons assigned why respondent was negligent.

It is and must be conceded that ordinarily both of the foregoing questions would be questions of fact rather than of law. It must, however, also be conceded that a proposition arising in a particular case cannot always be determined by the application of mere general rules. Facts and circum- stances do not only modify, but they very often entirely silence, general rules. What is there in this case on which a jury of fair-minded men could base a finding that the respondent was guilty of negligence in either one or both of the particulars above stated? What fact or circumstance is there disclosed by the evidence from which a fair-minded man can deduce negligence on the part of respondent, and, if such negligence were found, what is there to show that it either caused or proximately contributed to the collision? Counsel do not point to a single act or omission which they insist constituted negligence on the part of respondent, but what they contend for is that the jury might have found negligence. What are the facts and circumstances? On a dark and cloudy night a car in passing at a moderate rate of speed along a certain street outside of the city limits of a populous city, and at a point where there is no public crossing, nor, so far as the evidence discloses, was it a place where people were in the habit of crossing or passing over or along the car tracks. At such a place a collision occurs with a person who is on the car tracks. The car is provided with a headlight. If not brilliant, it was nevertheless clearly seen for a considerable distance before the car arrived at the point of the accident. In addition to this, lights were shining in the car itself which made the car visible to all who looked as it approached a given point for a long dis- tance. Moreover, the person who now complains of the in- sufficient lights says she did not look for a car, and saw none approaching at any time before she was struck. If she did not look, she could not see the lights, and thus it follows that whether they were bright or dim could have had no possible effect upon appellant, and hence cannot be consid- ered as an element in the case. But, as already remarked, the lights were in fact plainly visible, and were seen for a

long distance by others, and what others did in fact see it
must be assumed appellant could have seen in view that
those who did see were in no better position to observe the
lights than she was.

But there is another view worthy of consideration. There
is absolutely no evidence respecting the kind or character
of a headlight respondent ought to have provided for its cars.
Appellant's right to a recovery must rest upon a violation
of some legal duty by respondent which it owed her.  What
was respondent's legal duty with respect to the headlight?
If the light was such as would answer the purposes of a
headlight in the operation of respondent's car, and was suffi-
cient to protect the public against injury from a moving
car, it would seem that respondent had discharged its full
legal duty owing to appellant.  In view of the relations exist-
ing between appellant and respondent, the jury could not
arbitrarily assume that the injury was caused through the
fault of respondent.  Unless there was some competent evi-
dence to show that respondent was negligent with
respect to some of the acts or omissions complained
of, and that such acts or omissions, or either of them,
constituted the proximate cause of the injury, she must fail
as a matter of law.  In this case there is no room for a
presumption that appellant was in the exercise of ordinary
care in attempting to cross the track.  The usual presump-
tion upon this point is met by her own positive statements
to the contrary.  In the light of her statements, the head-
light had not the slightest influence upon the collision or
accident.  Under the evidence in this case, it is clear that the
result would still have been the same even though the head-
light had been much brighter than the testimony shows it
was.  The appellant was apparently walking nearly at a
right angle to the direction the car was going.  If she walked
at the ordinary pace of three miles an hour, she would travel
at the rate of about four and one-third feet per second.  If,
on the other hand, the car was going at the moderate rate of
speed testified to, say about ten miles an hour, it would
travel at the rate of about fourteen and one-half feet per

second. Appellant would thus move towards the track about seventeen feet in four seconds of time and the car in the same time would move forwards about fifty-six feet, and each would move one-half that distance in one-half of that time. From this it follows that the accident on a dark night would most likely happen just as the witnesses have said it did happen. Appellant in moving toward the track would suddenly step out of the darkness into the rays of the headlight which would be cast forward somewhat in the shape of a funnel. The motorman could not see her until she appeared in the path of the light rays, and all he could do then would be just what the motorman did on the car in question, namely, stop the car as quickly as possible. If to do this required the short space of two seconds, the car would still move forward, if continuing its speed, twenty-nine feet, and, if checked, possibly anywhere from fifteen to twenty-five feet. Again, it is plain that if appellant had entered upon the track when the car was as much as thirty feet or more feet, or even twenty-five feet, away from the point where she stepped on the track, she, if she kept on going, would have passed over it by the time the car reached her, because in two seconds of time, if going at the ordinary pace aforesaid, she would have traveled forward over eight feet, which is more than the width of the track. She must therefore have stepped on the track when the car was less than twenty-five feet, and likely less than twenty feet, away from her. Further, in view of appellant's statements that she did not look, and hence did not see the headlight nor the lights in the car while others in similar situations with respect to the tracks did see them, it follows as a self-evident proposition that neither the brightness nor the dimness of the headlight could have any possible effect in either bringing about or in averting the accident. The case might be entirely different if it had been daylight and the motorman could, and thus should have seen appellant approaching the tracks in front of the oncoming car, or if the street had been lighted and he could have seen her, or if the place of the accident were a public crossing or some place where people

were in the habit of crossing the tracks, or if anything was made to appear from which the jury could have found that either the respondent or its servants in charge of the car had failed in the duty imposed upon them by law.

Keeping in mind what we have just detailed, it is manifest that the conditions usually surrounding a street car collision between a pedestrian in the street and a motor car are so variant and complex that it is in exceptional cases only that the question of due care, or the want thereof, on the part of either party, is one of law. Where, however, the facts are not in dispute, and the inferences are such that it is self-evident to all reasonable minds that the only acts of negligence complained of were not the proximate cause of the accident, a court may not ignore the duty which is imposed upon it, namely, to pronounce the judgment required by law. But, assuming that we are mistaken with respect to respondent's negligence, how can appellant avoid her own negligence in going on the track in front of a moving car? Had any of the conditions that we have just enumerated prevailed at the time of the accident, or if appellant's attention had been diverted, or if she was confused, or required to choose between two threatened dangers, or if she had relied upon certain conditions which in some way had affected her judgment, or if the evidence showed that her conduct was or might have been influenced by anything which the jury might properly accept as an excuse, then the question of her negligence, like that of respondent, would have been for the jury to determine. The law, however, does not permit a jury to arbitrarily excuse appellant, who was *sui juris,* and who was in full possession of her senses, from the consequences of her negligent acts or omissions. In order to recover for injuries caused by being struck by a moving car, a plaintiff must at least have been exercising ordinary care for his own safety. By ordinary care, as applied to the going on or crossing street car tracks in cities and towns, we do not mean that a pedestrian is necessarily, under all circumstances, required to look and listen whether a car is approaching him or not. A pedestrian about to go onto or

cross a street car track may possess information relative to the situation of a car and his surroundings upon which he may rely without specially looking or listening for the approach of such a car. What is required of one who is about to cross a steam railroad track in this regard is not applicable to one who attempts the same thing with respect to a street car track. Again, one may have looked and have seen a car coming at a legal rate of speed, and the car may suddenly increase its speed so that a collision might occur when the one who looked assumed, and had a right to assume, that the car would not in so short a space of time arrive at a particular point, and hence that he was in no danger of a collision. All of this has happened, and the courts have passed upon almost innumerable phases of street car accidents. Nothing is better settled, however, than that a pedestrian in going upon a street car track which is being used for the passage of street cars must use his senses and faculties to avoid a collision with a passing car. If, therefore, it is dark and a pedestrian seeks to cross a track at a point where there is no public crossing or where people do not ordinarily cross, he must exercise ordinary care to ascertain whether a car is approaching the point or not, because at such a point under such conditions he has no right to expect a warning from the operators of the car. Under such circumstances, the advantage is all with the pedestrian. He can see the lights of the car, and, under ordinary circumstances at least, he can also hear it coming, and may thus easily avoid a collision. Can it be said that fair-minded men can differ with regard to whether a person exercised ordinary care or not in going upon a street car track under the circumstances disclosed by the evidence in this case? Can it be said that a person exercised ordinary care when he admits that he on a dark night walked right onto a track in front of a car which was lighted and which others similarly situated saw approaching for a considerable distance? If to be absolutely oblivious to one's surroundings constitutes ordinary care for one's safety, then it may be said that appellant exercised such care in attempting to cross the tracks at the

time and place and under the circumstances shown by the
evidence. The decided cases leave little, if any, room for
doubt that appellant was guilty of negligence as a matter of
law. On this question the author of Nellis on Street Railway
Accident Law, p. 389, says: "One who voluntarily walks
upon a street railway track at night, with full knowledge
that a car may come up at any moment, cannot recover
damages for injuries, when by ordinary care he could learn
of the approach of the car, and the driver by reasonable
diligence could not avoid the accident." This text is sup-
ported by the following among other numerous other cases:
*Jewett v. Paterson Ry. Co.,* 62 N. J. Law, 424, 41 Atl.
707; *Balla v. Metropolitan St. Ry. Co.,* 27 Misc. Rep. 775,
57 N. Y. Supp. 746; *Thorsell v. Chicago St. Ry. Co.,* 82
Ill. App. 375; *Stowers v. Citizens' St. Ry. Co.,* 21 Ind.
App. 434, 52 N. E. 710; *Curry v. Rochester Ry. Co.,* 90
Hun, 230, 35 N. Y. Supp. 543; *Thompson v. Buffalo Ry.
Co.,* 145 N. Y. 196, 39 N. E. 709.

The foregoing cases not only hold that under the circum-
stances disclosed by the record in this case appellant · was
guilty of contributory negligence as a matter of law, but
many of them also hold that under facts similar to those
in this case the respondent was not guilty of negligence as
matter of law. In so far as appellant's contributory negli-
gence is concerned, the case at bar is in principle not dis-
tinguishable from the cases of *Burgess v. Salt Lake City Ry.
Co.,* 17 Utah 407, 53 Pac. 1013, and *Hall v. Railway,* 13
Utah 243, 44 Pac. 1046, 57 Am. St. Rep. 726. Indeed, if
there is any difference, the Burgess case, in view of the
surrounding circumstances and conditions, was much stronger
in favor of the injured person than is the case at bar. The
contention that the case of *Spiking v. Consolidated Ry. &
P. Co.,* 33 Utah 313, 93 Pac. 838, is an authority supporting
appellant's contention, is untenable. In that case it was con-
tended by the company that the court erred in instructing
the jury that it was the duty of the deceased to "observe the
car," instead of requiring him to "look for the car" before
attempting to cross the track. The duty imposed by the

instruction it was contended was less than that which the
law required, namely, that a pedestrian before attempting
to cross the track must either look or listen or do both. We
there held that in view that the court had told the jury in
other instructions that a pedestrian before going onto a track
must exercise ordinary care for his own safety and to that
end must use his senses was sufficient to inform the jury with
respect to the duty the law required from him. We did not
hold in that case, nor do we now hold, that under no circum-
stances will the law require of a pedestrian before attempting
to cross a street car track that he look or even listen for an
approaching car. Nor did we hold, nor do we now hold, that
a pedestrian cannot recover for an injury sustained by him in
a collision with a street car because he did not look for an
approaching car. What we do hold is that under the facts
and circumstances of this case, and when it affirmatively is
made to appear that the injured person attempted to cross
in the darkness of night, and that she exercised no care
whatever before entering upon the track and made no use
of her senses at all to ascertain whether a car was approach-
ing the point where she attempted to cross, which was not a
public crossing nor a place where people were in the habit
of crossing or of using the track, and where there was noth-
ing made to appear which distracted her attention, that such
person cannot recover as a matter of law. In the Spiking
Case, *supra,* the evidence was not only in conflict, but it was
such that in view of the place where and the conditions under
which the accident occurred the question of negligence on
the part of both parties was clearly one of fact for the jury.
The case of *Jewett v. Paterson Ry. Co., supra,* is in princi-
ple precisely like the case at bar, while the case of *Consoli-
dated Traction Co. v. Glynn,* 59 N. J. Law 432, 37 Atl. 66,
which is referred to in the Jewett Case, *supra,* is not dis-
tinguishable from the Spiking Case. The Supreme Court of
New Jersey in the Jewett Case held the plaintiff guilty of
contributory negligence as a matter of law, while in the

Glynn Case the same court had held as we did in the Spiking Case, namely, that the case was one for the jury.

From what has been said it follows that in this case the jury could do no more than either to excuse the one or condemn the other of the two parties, and do this without any evidence upon which to base the excuse or the condemnation.

The judgment therefore should be, and it accordingly is affirmed. Costs to respondent.

McCARTY, J., concurs.

STRAUP, J. (concurring).

Viewing the evidence in a light most favorable to the appellant, I think the verdict was properly directed, and I therefore concur in the result affirming the judgment. There is evidence showing that fenders as ordinarily attached to cars extended about eighteen inches in front of them and about eighteen inches to two feet above the rails. When the car was stopped, the appellant was found lying under the fender. There was no evidence showing that the fender had dropped, or that its suspended position on the car had been disturbed. I think upon the evidence the inference was permissible that it had not dropped, and that its position had not been disturbed. I shall therefore assume that the jury would have been justified to so find. The negligence alleged in respect of the fender was that it was "not good and sufficient," and "not in a good state of repair," and "would not operate to prevent injury to a person" struck by the car. In my judgment the proof that plaintiff was struck by the car and was found lying under the fender undisturbed from its position is not sufficient to support such allegations. There is no other evidence tending to prove them.

I think it may be conceded that a headlight is intended for two purposes—one, to enable the operatives of a moving car to view the track in advance of it; the other, to enable persons about the track and street to ascertain the approach of cars. There is evidence showing that the headlight on the car was very dim, and that it cast its rays but twenty

feet in front of the car.  I think such evidence important as bearing on both purposes.  Triers of fact may well say that such a light would not ordinarily enable car operatives to discover persons or objects upon or about the track and avoid collision.  But negligence with respect to the light is not predicated on the theory that the car operatives by reason of the dimness of the light did not see or discover the appellant.  Such negligence was alone predicated upon the theory that appellant by reason of the dimness of the light could not see nor discover the approach of the car.  Because the evidence conclusively shows that she did not look at any time after leaving the sidewalk and while attempting to cross the street for the approach of cars, the dimness of the light, when considered with respect to the alleged negligence, was not the direct cause of her failure to discover the car.

No question is here made that the operatives of the respondent were negligent in the operation of the car.

Now, as to contributory negligence.  Of course, the appellant was required to use ordinary care.  Ordinarily that question is one of fact.  To here say that the appellant was guilty of negligence wherein was she at fault?  What act or acts committed or omitted by her rendered her conduct negligent?  She was in the street, where she had the right to be.  She had the right to cross the track at the place attempted by her.  It cannot be said as a matter of law that a prudent person of her age, and under the circumstances of the case, would not have attempted to cross the track at the place in question.  It is not claimed that she was negligent in the position taken by her on the track.  She testified that she had just crossed one track and was attempting to cross another when she was struck.  Another witness testified that he saw her but a moment, and she appeared to him to be standing or walking on the track, or facing south, the direction in which the car was moving.  The claim of negligence made on her part is that she under all the circumstances ought to have ascertained whether cars were approaching before attempting to cross the tracks, and that she failed to

do so; and the way to ascertain that was to look, which she did not do. Her conduct is not complained of in any other particular. So that the question is squarely presented whether her failure to look, under all the circumstances, shall be declared negligence by the court, or whether the question was one of fact for the jury. Conceding, as is urged by appellant, that the question generally is one of fact, as I think it is, and as has been generally held by the courts, yet it does not follow that it never is for the court. Though the headlight on the car was dim, yet it could have been seen for about a block—six hundred and sixty feet. There is no doubt that, had the appellant looked, she readily could have discovered the approach of the car. Knowing that she was about to cross the tracks, she on a dark night left the sidewalk, and without looking for the approach of cars started to walk across the street, and in her attempt to cross the tracks stepped in front of a moving car, but a short distance away, about twenty or twenty-five feet. I think that was negligent.