## BARLOW v. UTAH LIGHT & TRACTION CO.

No. 4819.  Decided April 20, 1931.  (298 P. 386.)

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for appellant.

*Bagley, Judd & Ray,* of Salt Lake City, for respondent.

STRAUP, J.

This action was brought by Barlow, the plaintiff below, against the Utah Light & Traction Company to recover damages for personal injury alleged to have been sustained by him through the company's negligence in the operation of one of its street cars in Salt Lake City. The case was tried to the court and a jury. At the conclusion of the plaintiff's

evidence the defendant, without offering any evidence, also rested and made a motion that a verdict be directed of no cause of action, on the ground that the plaintiff as matter of law was shown guilty of contributory negligence. The motion was granted, and a judgment entered accordingly, from which this appeal is prosecuted. The only question presented for review involves such ruling.

The collision of the street car operated by the company and an automobile, a Chevrolet coupe, driven by the plaintiff, occurred at about 2 o'clock in the afternoon of December 28th, at a street crossing or intersection of Seventh East street, running north and south, and First South street, running east and west, in the center of which the company maintained double street car tracks; the distance between the rails of each track being 4.8 feet and the distance between the two tracks 7 feet. Street cars operated on the south track were operated from the city towards the east, while street cars operated on the north track were operated towards the west and towards the city. The width of each street from property line to property line is 132 feet, but only 96 feet from curb to curb on First South street. Seventh East street is up grade towards the north, and First South street down grade towards the west. As the plaintiff, with a lady companion in the automobile, was driving north over the street car tracks, the front part of his automobile was struck on or near the second or north track by a street car operated on that track from the east.

A city ordinance was alleged and put in evidence by the plaintiff, which provided that a motorman or other person in charge of the operation of a street car was required "to keep a vigilant watch for all persons, teams, vehicles * * * either on the track or tracks, or near the same, or moving toward the same, and on the first appearance of danger to such team, vehicle, or person, said car shall be placed under careful control, and shall be stopped in the shortest time and space possible," and that it was unlawful to operate a street

car over a street crossing at a speed greater than 15 miles an hour.

In the complaint it is alleged that the street car with which the collision occurred as it approached and entered the crossing was operated at an unlawful, dangerous, and excessive speed of 30 or more miles an hour; and without those in charge thereof observing a proper or sufficient or any lookout, and without giving any warning of its approach. It further is alleged that at the crossing for some considerable time the defendant suffered and permitted accumulations of ice and snow between and on the sides of the street car tracks, causing deep ruts and ridges, and rendering it more or less difficult to drive an automobile over the tracks, which, as is alleged, imposed a greater vigilance on street car operators in discovering the presence and approach of automobiles and vehicles, and the exercise of greater care and caution in the operation of a street car approaching and passing over the crossing.

All of the material allegations of the complaint were denied, and, in addition thereto, the defendant alleged contributory negligence on the part of the plaintiff, in the particulars that he carelessly and negligently entered the crossing when two street cars were approaching it, one from the west or the east-bound street car, and the other from the east or the west-bound street car, and negligently drove in front of the east-bound street car and into the west-bound street car; that his automobile, in violation of traffic rules of the city, was not equipped with safe or proper brakes and braking appliances, and was not driven in a careful or prudent manner; that, in violation of traffic rules, the plaintiff drove the automobile so as to hinder, delay, and obstruct the movements of the street cars; that he failed to yield the right of way to the west-bound street car with which his automobile collided; and that he failed to look or listen to discover the approach of the west-bound street car; and that such failure was the direct and proximate cause of the collision and injury complained of.

Though the evidence adduced came all from the plaintiff and his witnesses, yet in certain particulars it was somewhat in conflict, especially as to the condition of the weather, the distance, because of a snowstorm, one could see and discover objects, the speed at which the west-bound street car traveled as it approached and entered the crossing and collided with the automobile, and as to some other conditions and circumstances surrounding the accident. Since, however, the verdict was directed against the plaintiff, we, in considering and reviewing the ruling, are required to take the testimony and the reasonable inferences deducible therefrom in the light most favorable to the plaintiff. Nor are we justified in picking out portions thereof most strongly against the plaintiff and base a ruling thereon, nor are we on the record at liberty to rule the case on what we might regard to be the preponderance or greater weight of the evidence. The verdict was directed, and the ruling here defended, on the sole ground of contributory negligence of the plaintiff, in the particular that he failed to see or discover the approach of the west-bound street car, and, as is claimed, drove immediately in front of it and under such circumstances as to render him guilty of negligence as a matter of law. Nothing is claimed for any of the other alleged acts of contributory negligence.

Thus in stating the case and in referring to the evidence we do so in the light most favorable to the plaintiff. Seventh East street, on which the plaintiff was driving, has a parking in the center. Vehicles traveling on that street to the south travel on the west side of it, and those traveling to the north on the east side thereof. One thus driving north on the street and approaching and entering the street intersection, would drive over the east portion of the intersection. It was shown that there were considerable ice and snow on the street, on the crossing, and on the side of and between the street car tracks, which caused deep ruts in the ice and snow on the traveled portion of the street and crossing, as some witnesses testified eight inches deep, which interfered

with the driving of an automobile over the crossing and over the street car tracks, and that, in driving along and over the same, one was required to follow and keep in the ruts, from which it was difficult to turn out.

It was further shown that, on the day and at the time of the accident it was snowing and blowing. The evidence is somewhat in conflict as to the severity of the storm. One witness testified he did not know whether it was snowing at the time of the accident or not. Others testified that "it was snowing quite hard. Big flakes, but there was no wind." Others testified that it was "snowing and blowing, a terrible day. At the time of the accident it was snowing and blowing terribly. It was a terrible storm." Others testified, "It was very stormy," and that it was "a kind of sleety snow." Some witnesses testified that because of the storm one could see a distance of only 50 to 75 feet.

It was under such circumstances, and under such stated adverse driving conditions of the street and of the crossing, that the plaintiff approached the crossing driving in a northerly direction, and attempted to drive over the street car tracks. As he approached the crossing, he discovered a street car also approaching it coming from the west and to his left on the first or south street car track. He slowed down, not knowing whether the street car would stop or not. The street car also slowed down, and, as it neared the center of the crossing stopped and let the plaintiff pass. He threw his automobile in intermediate gear and passed on at a speed, as some witnesses testified of 5 or 6 miles, others 7 or 8 miles, an hour, and, as witnesses testified, paying attention to his driving. As he attempted to do so, the front part of his automobile was struck by a street car operated from the east or on the second or north street car track. Witnesses testified that that street car, as it approached and entered the crossing and collided with the automobile, was operated at about 30 miles or more an hour, others from 35 to 40 miles, others very fast, "going at a terrible speed," without sounding the gong or whistle, or giving any warning of its

approach and without slackening the speed of the street car or applying the brakes, until it struck the automobile, which, by the impact, was carried down the track between the two street cars in a demolished condition a short distance beyond the standing east-bound street car, where it burst into flames with the occupants of the automobile underneath it. The plaintiff was rendered unconscious, was severely injured and burned and did not regain consciousness until some time later at the hospital.

The claim is made that the plaintiff was guilty of negligence because he failed to discover the west-bound street car which collided with the automobile. A witness who was on the east-bound street car testified that he saw the plaintiff about 100 feet south of the street car tracks approaching the crossing going about 8 miles an hour; that the street car on which the witness was stopped to permit the plaintiff to pass; that "I saw the westbound street car just a fraction of section before it hit the automobile. The automobile in crossing the eastbound track was going about 5 miles an hour. He (plaintiff) went about 5 miles an hour in crossing from the south track over to the north one. I was watching the automobile in front of the street car I was on. I had not seen the other street car. I was looking in that general direction out of the front of the car. I saw the westbound car just a fraction of a second before it struck the automobile. It seemed to loom up all at once." Such witness further testified that on account of the storm he could not see a full block; "I don't know how far you could see."

A witness on the west-bound street car testified that it was very stormy; that the street car was going unusually fast; that no gong was sounded; that no brakes were applied, and that the speed not checked until the collision; that the witness was listening especially that day for the bell, because it was snowing and sleeting, which impaired "the view of everybody that got on that car and that is why I was listening and watching. I differ with the other witnesses as to how far you could see."

Another witness on the east-bound street car testified that "it was snowing and blowing, a terrible day. At the time of the accident it was snowing and blowing terribly. I would say the limit of vision was 50 to 75 feet in the storm; it was a terrible storm. The east-bound car was running slow as we entered 7th East and I saw a Chevrolet coupe, Mr. Barlow here was driving, just about as it started to cross the sidewalk going north. He came right along and I could see he was going to cross the track and he drove up just like anybody would to cross the track, appeared like he was attending to business in every way and just before he entered the car track I noticed the west-bound car coming at a terrible speed. I was watching the whole thing and just as he got the front wheels on the north-bound track the street car hit him. * * * The automobile was going something like 10 miles an hour and the front of the street car hit the automobile near the front wheel. There was no ringing of a gong or any whistle of any kind. There was no setting of any brakes up until the time of the crash. * * * I would say the west-bound car was driving at the time it hit the automobile at about 35 or 40 miles an hour. * * * I would judge the automobile passed about 25 feet in front of the street car (the eastbound street car). * * * When I saw the west-bound street car, the automobile was just starting to approach the south tracks. It was just going on them. The west-bound street car at that time was about 50 feet away from it. I would say it was probably 10 to 25 feet from the east line of the intersection. I had no difficulty in seeing it and I could see it was going at a speed of 35 to 40 miles an hour."

Another witness, a truck driver, driving a truck west behind the west-bound street car on the same side of the street testified that "it was snowing a kind of sleety snow. All I could see was out from the windshield. I could see about half a block (about 330 feet). The first thing I observed at the intersection of 7th East Street was the fire underneath

the street car. Where the windshield was clear I had no difficulty seeing the street car and flame."

It was further shown that the wheel base of the automobile was 104 inches with the hood extending somewhat beyond that. While it is not shown that the automobile driven by the plaintiff was a left-half drive, yet, as about all automobiles are left-hand drives, it may reasonably be assumed that the automobile driven by him was a left-hand drive. He testified that as he approached and entered the crossing he saw the approach of the east-bound street car and was watching and paying attention to its movements and did not undertake to drive in front of it until it stopped to permit him to pass; that, as he was crossing the south or first street car track, he looked to the east for approaching street cars and discovered none; that it was snowing quite hard and there was snow on his windshield, except the portion kept clear by the automatic wiper in front of him; that the window of the automobile to his right, or to the east, was clear, and that as he looked through it to the east he could see about 125 feet, but saw no car approaching from that direction; that there were ruts of ice and snow on the traveled portion of the street and over the crossing, rendering it somewhat difficult to operate an automobile along the traveled portion of the street and crossing, and, as he approached and was about to cross over the street car tracks, he threw his automobile in intermediate gear. Since it is claimed that the verdict was directed and the ruling here defended largely on the testimony of the plaintiff, we further refer to it more in detail and as it appears in the printed abstract of the record and of which no complaint is made as there set forth. As there shown, he further testified:

"I saw the street car coming from the west side and it was going east, that would be on the track nearest to me it was about 125 to 150 feet away. The car was traveling very slowly and I judged it was slowing down for the purpose of discharging passengers. I shifted into intermediate gear and started to cross the track ahead of it. The street car stopped I should judge 4 or 5 feet from me. I started to cross the intersection when the street car was going slower and

slower; I thought at the time it was slowing up for the purpose of discharging passengers, it was still slowing up when I started across in head. It came to a full stop before I got across the track. Just as I was crossing the first track, I looked to the right. The snow was coming from an easterly direction and the front of the glass wasn't as clear as the side glass. The side glass was clear and that is the one I looked through. I could see 130 to 150 feet, somewhere along there. There was nothing within my range of vision. I didn't see any street car coming and I did not hear anything and there was nothing to indicate any car was coming west. After looking, I continued in intermediate across both tracks and was going about seven or eight miles an hour. There was lots of snow and ice between the rails, then there were ruts for the cars to go across in those ruts down to the rails where the street car had kept the ice and snow off the rails. It was very rough-going across the street car tracks, and I had to go slow of necessity. On the street car tracks the ruts were from 6 to 8 inches deep. I continued over the first tracks to the next one.

"The wheel base of my car is 104 inches; that means from the center of the front axle to the center of the rear axle. The hood extends beyond that, and the rear of the car extends beyond the rear axle. If the hind wheels were on the first track the front wheels would be 104 inches ahead and the hood would be ahead of that. When my hind wheels were on the first track the front wheels would be somewhere over on to the next track. After making that observation and seeing no street car, I proceeded across the track. There was nothing to indicate a west-bound car coming. I have no recollection of anything further until I woke up in the hospital about three weeks later."

On cross-examination he testified:

"I never saw the west-bound street car. I first looked to the east just as I was crossing the south tracks. I looked to the west as I came into the intersection. The windshield wiper was working but the window on that side was clear. If the snow hadn't had anything to do with it, I could have seen the street car. If the west-bound car had been 125 feet from me when I looked, I could have seen it. I never saw that street car at all and never knew what hit me. * * * I saw the east-bound car coming when it was about 40 or 50 feet west of the intersection. I did not see the car coming from the east at any time. The brakes on my automobile were in good condition. Up until I came to the curb line I was going from 15 to 20 miles an hour, then I slowed down. I didn't know whether the street car was going to stop or not but when it slowed down I started up in intermediate.

I went in front of that car when it was stopped. I think it stopped to let me pass. The motorman on that car stopped to give me the right of way. I was about 2 feet from the track when the car stopped. If that street car hadn't stopped, I would. I couldn't have gone on unless it had stopped. When it stopped I proceeded to cross in front of it and from that time on I didn't stop or slow up until the accident. When I started to cross the south track, I looked to the east and then proceeded straight across the track. I looked while crossing the first track and then I gave my attention to the road. At the time I got across the south track I was on the north track. The only time I looked was when I was on the eastbound track. I looked for a street car and didn't see any then I started across the tracks. I probably didn't see the street car for the same reason the motorman didn't see me. I looked and didn't see anything on the track so I crossed. The reason I didn't see the street car is that if the car was going as fast as the witnesses say it was, it would not be in my vision at the time I looked. When I started across the tracks I was going 7 or 8 miles an hour. If the car was going 4 times as fast as I was and I was 8 feet, it would be 32 feet away. I was not concerned with the eastbound car because it had stopped before I started across the track.
\* \* \*

"Half of the automobile is ahead of me anyway. There was nothing in sight on the west-bound track within the range of my vision at the time I looked. If the west-bound car had been coming down there under proper warning I would have seen it and would have stopped."

We think it well settled, and we do not understand the proposition seriously is disputed, that one driving along a public street is not bound, as matter of law, or as a rule of law, to look or listen for approaching street cars before going on or attempting to cross a street car track, and that ordinarily it is not contributory negligence as matter of law if he fails to look or listen for approaching street cars before going on or attempting to cross a street car track, and that the rule in such respect is different as to one approaching or attempting to cross a steam railroad track. Such is the rule in this jurisdiction. *Gibson* v. *Utah Light & Traction Co.*, 46 Utah 562, 151 P. 76, 79; *Spiking* v. *Consolidated Railway & Power Co.*, 33 Utah 313, 93 P. 838; *Hall* v. *Ogden City Street Ry. Co.*, 13 Utah 243, 44 P. 1046, 57 Am. St. Rep. 726; *Jensen* v. *Utah Light & Ry. Co.*, 42 Utah

415, 132 P. 8; and is recognized in the cases of *Oswald* v. *Utah Light & Ry. Co.*, 39 Utah 245, 117 P. 46, 48; *Pratt* v. *Utah Light & Ry. Co.*, 38 Utah, 500, 113 P. 1032; *Burgess* v. *Salt Lake City R. Co.*, 17 Utah, 406, 53 P. 1013. And to that effect are the authorities generally. *Evansville Street Railroad Co.* v. *Gentry*, 147 Ind. 408, 44 N. E. 311, 37 L. R. A. 378, 62 Am. St. Rep. 421; *Kolb* v. *St. Louis Transit Co.*, 102 Mo. App. 143, 76 S. W. 1050; *Citizens' Street Ry. Co.* v. *Albright*, 14 Ind. App. 433, 42 N. E. 238, 1028; *Moore* v. *Rochester Ry. Co.*, 204 N. Y. 309, 97 N. E. 714, 49 L. R. A. (N. S.) 505; *Bass' Adm'r* v. *Norfolk Ry. & L. Co.*, 100 Va. 1, 40 S. E. 100; *Philbin* v. *Denver City Tramway Co.*, 36 Colo. 331, 85 P. 630; *Woodhull* v. *Connecticut Co.*, 100 Conn. 361, 124 A. 42; *Union Traction Co.* v. *Moneyhun*, 192 Ind. 288, 136 N. E. 18, 28 A. L. R. 211; *Marshall Traction Co.* v. *Dunn* (Tex. Civ. App.) 238 S. W. 692.

In the case of *Gibson* v. *Utah Light & Traction Co.*, supra, this court said:

"If the plaintiff, under the same circumstances, and in view of his admissions, had gone onto a steam railroad track in front of an approaching train or engine, it might well be held, as we held in *Wilkinson* v. *Railroad*, 35 Utah 110, 99 P. 466, that he was guilty of negligence preventing a recovery as a matter of law. Again, if the plaintiff had gone onto a street car track in front of an approaching car at night at a place where it was dark so that he could not have been seen approaching the car track by the operator of the car, and when he could easily have seen the approaching car, and where people did not habitually cross the track, as was the case in *Pratt* v. *Light & Ry. Co.*, 38 Utah 500, 113 P. 1032, or if he had done so under the circumstances that prevailed in *Oswald* v. *Light & Ry. Co.*, 39 Utah 245, 117 P. 46, it might well be held, as it was held in those cases, that a nonsuit or a directed verdict would have been proper. We have, however, often held that the same degree of care is not imposed upon a pedestrian attempting to cross an ordinary street car track that is imposed on him in attempting to cross a steam railroad track. The reason of the rule is so palpable that it requires no discussion. We have also often defined the reciprocal duties imposed upon both the street car company and the ordinary traveler so far as those duties can in terms be defined. In that regard we have held that, while the street car company possesses a preferential right of passage along and over its street car

tracks to which right all others must yield, yet that the duty of exercising ordinary care by both the company and the traveler who may be using the street is reciprocal; that is, both the traveler and the street car operatives must exercise ordinary care as more particularly defined and stated in *Spiking* v. *Railway & P. Co.*, 33 Utah 337, 93 P. 838, and in other cases decided since then. In view of those decisions, under the circumstances of this case, what was the duty that was imposed upon both the plaintiff and the operators of the street car in question? It is manifest, as already stated, that by either stopping and listening, or by stopping and looking for the approaching car, the plaintiff could have discovered its approach, and could thus have avoided the collision.

"A traveler, under the law, however, is not required either to stop and listen, nor yet to specially look for an approaching car. He is bound to exercise ordinary care for his own safety in passing over a street car track, and whether he has complied with that duty under the peculiar circumstances as they are developed in each case is, ordinarily, a question of fact and not of law."

In a way, the Gibson Case is attempted to be distinguished from this case, in that in the former the injured plaintiff was a pedestrian and in the latter a driver of an automobile. We see no basis for such distinction. We think it may not be said that, if a pedestrian fails to look and listen before attempting to cross a street railway track, the question of his negligence is one for the jury; but, if a driver of a vehicle fails to do so, he is guilty of negligence as matter of law. The substance of the testimony of the plaintiff in the Gibson Case as to the accident is set forth in the opinion, as well as testimony of other witnesses. Comparing such testimony with the testimony of the plaintiff and his witnesses in this case, it readily is seen that the plaintiff in the Gibson Case had a better opportunity to discover the approaching street car than had the plaintiff in this case.

These cases teach, and there are many others to the same effect, that whether the failure of a traveler about to cross a street railway track on a public street to look or listen for approaching cars constitutes negligence must be determined from all the facts and circumstances of the particular case,

and that as a general rule, the question is one of fact to be submitted to a jury.

So too is it well settled that the driver of an automobile or other vehicle approaching street car tracks and the street car company have equal rights to the street and to the use thereof, have reciprocal obligations under the law to observe the rights of each other, and owe each other at street intersections the duty to exercise substantially the same degree of care to avoid collision, although the street car may have the right of way. 1 Blashfield, Cyc. Auto. Law, § 1, p. 862; *Reed* v. *Tacoma Ry. & P. Co.*, 110 Wash. 334, 188 P. 409; *Yaffee* v. *Ft. Smith L. & T. Co.*, 153 Ark. 416, 240 S. W. 705; *Gibson* v. *Utah Light & Traction Co.*, supra.

Now what is there in this case to take it out of the stated general rule? Among other things it is urged that the testimony of the plaintiff that as he crossed the first or south track he looked to his right or to the east and saw no street car approaching from that direction is incredible, or, if he looked, he looked so inattentively as not to see what is claimed was plainly visible and heedlessly drove in front of a rapidly roving street car. In support of that the respondent relies on what was ruled and stated by this court in the cases of *Oswald* v. *Utah Light & Ry. Co.*, supra, *Pratt* v. *Utah Light & Ry. Co.*, supra, and *Burgess* v. *Salt Lake City Ry. Co.*, supra, cases involving collisions between pedestrians or drivers of vehicles and street cars at street crossings, and where, though the general stated rule was recognized, yet the plaintiff as matter of law held guilty of negligence. The respondent also cites and relies on cases from other jurisdictions, among them, *Barboe* v. *Sioux City Service Co.*, 205 Iowa 1074, 215 N. W. 740; *Dow* v. *Des Moines City R. Co.*, 148 Iowa 429, 126 N. W. 918; *Molby* v. *Detroit United Ry.*, 221 Mich. 419, 191 N. W. 29; *Colborne* v. *Detroit United Ry.*, 177 Mich. 139, 143 N. W. 32; *Willis* v. *Boston & N. St. R. Co.*, 202 Mass. 463, 89 N. E. 31; *Komsa* v. *Public Service R.* (N. J. Sup.) 140 A. 316; *Cooley* v. *Tacoma R. & P. Co.*, 120

Wash. 452, 207 P. 608; *Kun* v. *Detroit, J. & C. R. Co.,* 240 Mich. 598, 216 N. W. 380; and *Meyers* v. *B. & O. R. R. Co.,* 150 Pa. 386, 24 A. 747.

It is unnecessary here and not practicable to review each of these cases in detail. We think they are not controlling or applicable, for the reason that the facts and circumstances concerning the accident and upon which the cases were ruled, were dissimilar from the facts and circumstances of the case in hand. That is especially true as to the cases cited from this jurisdiction. We think that readily perceived on reading them. Every opinion or decision must be read and considered in the light of the facts upon which it is based. Hence what may have been said in a particular case, though entirely proper and applicable thereto, may in another case of dissimilar facts be inapplicable. Attempts to pick out particular language or parts of an opinion without reference to the facts upon which it is based and apply them indiscriminately in another case of dissimilar facts is apt not to reflect the former and liable to reach wrong results in the latter. We may here say what in effect was said in the cited case of *Barboe* v. *Sioux City Service Co.,* that every case involving a ruling on a motion for a directed verdict must rest upon its own facts and that precedent can be of but little value. As there stated, we also say, that the rules of law governing the case are familiar. The difficulty is in applying them to the particular case. We have said, and as other courts many times have said, that, though there is no absolute rule of law requiring a person, traveling on or using streets on which street cars are operated, to look and listen for approaching street cars before driving or going on or attempting to cross a street car track, nevertheless he is required to use ordinary care for his own safety and protection to avoid accidents and collisions and to exercise care in proportion to the danger to be avoided and may not heedlessly or inattentively step or drive in front of a moving street car plainly visible to him *(Jensen* v. *Utah Light & Ry. Co.,* supra. *Oswald* v. *Utah Light & R. Co.,*

supra, *Pratt* v. *Utah Light & Ry. Co.*, supra, and other cases heretofore referred to), and that in a given case a traveler's conduct may be of such character as to show negligence on his part as matter of law, and where a jury would not be permitted to pronounce his conduct other than as negligence.

The question here to be determined is, Was the conduct of the plaintiff of such character. The case is not one where the plaintiff, under normal conditions and under ordinary and unusual circumstances and in the absence of a storm and of the stated adverse road conditions was approaching a crossing and attempting to drive over it, as was the situation in many, if not in all, of the cited cases where the injured pedestrian or driver was held guilty of contributory negligence. In considering the question we must not lose sight of the particular facts and circumstances of the case. Here, as testified to by some of the witnesses, the plaintiff was approaching the crossing in "a terrible snowstorm," when it was "snowing and blowing," and under adverse road conditions as heretofore indicated. As he approached it, a street car from the west on the first or south track also approached the crossing. As it did so, it slowed down, and, as it neared the center of the intersection, stopped to permit the plaintiff to pass over the intersection, as some of the witnesses stated a few feet, others about 25 feet, in front of the street car. Until that car had stopped, and the plaintiff made aware that he no longer was in danger from such source, his attention was directed to the movements of that car. His testimony was that he slowed down and would have stopped if that street car had not stopped. Finding that it had stopped, he continued on at a speed as some witnesses testified from 5 to 6 miles an hour, others 7 to 8 miles. If the automobile driven by him was a left-hand drive, he was seated on the left-hand side of the automobile driving north. His testimony was that there was snow on the windshield obstructing his view, except the portion directly in front of him on which the automatic wiper operated. The side window to his right, he testified, was clear, and through it

he could see a distance of about 125 feet. The snow on the windshield, and to some extent the upright at the corner of the body of the automobile to his right, obstructed his view looking not in an easterly direction, but in a northeasterly direction. The only means he had of discovering an approaching street car from the east was through the side window looking in an easterly direction. The two street car tracks were 7 feet apart. Each track from rail to rail was 4.8 feet apart. The wheel base of the automobile was 104 inches; the hood extending beyond that. His testimony was that he looked to the east when about to cross, or when he was crossing, the first or south track. Just what portion of the automobile then was on or had passed over the first track, is not certain. The front end of the automobile was struck by the approaching street car. If when the plaintiff looked a part or one-half of the automobile had passed over the first track, the automobile had to travel only a short distance, 3 or 4 feet, until the front end was on the second track, or in such close proximity thereto as to be struck by the approaching street car. While the plaintiff testified that, when he looked through the east window, he could see a distance of 125 feet or more, yet other witnesses testified that because of the storm one could see a distance of only 50 to 75 feet. Some witnesses testified that, as the plaintiff was crossing the first track or about to cross it, the approaching street car from the east was only about 50 feet away, 10 to 25 feet from the east line of the crossing. The distance that the plaintiff and other witnesses testified one because of the storm could see, and the distance the street car was away when the plaintiff crossed or was about to cross the first track, of course, were mere estimates. Taking the distance relatively true that the approaching street car from the east was only about 50 feet away as the plaintiff crossed or was about to cross the first track at which time he said he looked through the east window, it is not at all certain that the street car then was in view of the plaintiff looking through the east window, not because he could not see a distance of

50 feet, but because the street car may then have passed his line of vision looking through the east window and was not visible looking through the windshield because of snow on it. At least we think reasonable minds may well differ with respect thereto, viewed from considerations of the severity of the storm and of the other attending circumstances.

The drawing of such an inference may not be refuted by the suggestion that it was not claimed by the plaintiff. He claimed he looked to the east when crossing the first track and saw no street car approaching from that direction, and that there was snow on the windshield obstructing his view, and that his only means of looking to the east was through the side window. Since, however, witnesses testified that when plaintiff crossed the first track the street car from the east was only 10 or 25 feet from the east line of the crossing, a conclusive deduction is urged that the testimony of the plaintiff that he looked is incredible as being against physical facts, and that he as matter of law was bound to look to the east for approaching street cars before attempting to drive over the second track and that his failure to do so rendered him guilty of negligence barring recovery. That is attempted to be fortified by calculations on erroneous assumptions that the plaintiff after he claimed he looked traveled 12 feet (4.8 feet over the first track and 7 feet between the two tracks) before his automobile was struck while the street car traveled 50 feet. We think all that is mere argument on facts coupled with erroneous assumptions of both law and fact. Just as plausible may it be argued that since the wheel base of the automobile was nearly 9 feet and the hood extending beyond that; that the front part of the automobile was struck by the street car; that it is common knowledge that the sides of a street car extend some distance over the rails of street car tracks; that the automobile when the plaintiff claimed he looked was partly over the first track and after he had looked he traveled not 12 feet, but only 3 or 4 feet when the automobile was struck; that the plaintiff was seated in the front part and on the left side of the auto-

mobile and driving over the east portion of the crossing and the street car then only 10 or 25 feet east of the east line of the crossing; that, with snow on the windshield obstructing his view, the only means he had of discovering the approaching street car was looking through the side window in a direct line to the east, it is not improbable that when he looked the street car was almost in front of or in a northeasterly direction from him and had passed his line of vision, unless he was able to look around an unobstructed corner; and then, if the street car was only 10 feet from the east line of the crossing (witnesses testified it was 10 or 25 feet) when the plaintiff was crossing the first track, it is still more probable that the street car was not in line of his vision looking through the east window as he was crossing the first track—conceding that all this too is mere argument (most inferences deduced from proven facts largely are matter of mere argument) still the inference that the street car when the plaintiff looked was not within his line of vision is as reasonable and probable as that attempted to be deduced on calculations based on mere estimates and not on exactness of distances and speed.

It further is urged by the respondent that the plaintiff when looking to the east through the side window and not discovering the approaching car from that direction moved on and attempted to pass over the second track without again looking, and, had he done so, he could have discovered the car and avoided the collision. On the record it is apparent that, after the plaintiff looked at the place he testified he did look, he moved but a few feet (depending of course on how much of the automobile was then on or had passed over the first track) until his automobile was struck by the approaching car from the east. As he thus moved on after he said he had looked, substantially the only view he had was directly in front of him through the portion of the windshield kept clear by the automatic wiper. To again have looked through the east window would not have disclosed the approaching street car then almost in front of

him. And then to lay down a rule that the plaintiff having looked and discovering no approaching street car, was again required to look to the east before attempting to cross the second street car track, though he traveled but a few feet after he had looked until he collided with the approaching street car, is to lay down a rule that, as matter of law, he was required, not only to look for approaching street cars from the east, but to look continuously in that direction until he had safely passed over the street car tracks, a rule as exacting, if not more so, than is required and applied in approaching and crossing steam railroad tracks.

Inasmuch as the truck driver testified that he, seated on his truck and driving behind the west-bound street car and looking through his windshield where it was clear could see about half a block, that another witness on the east-bound street car testified that he saw the automobile of the plaintiff approaching the crossing about 100 feet from the street car tracks, it is urged that what those witnesses saw or could see must also have been seen by, or was plainly visible to, the plaintiff when he looked to the east as he was crossing or about to cross the first or south track. However, it should be remembered there were other witnesses who testified that, because of the severity of the storm one could see a distance of only 50 to 75 feet. So too is it to be noted that several witnesses at the scene of the accident and looking in an easterly direction at the time the plaintiff was crossing the first track, and who were in a better position to discover the approaching street car than was the plaintiff, did not see or discover it until it was within 10 to 25 feet of the east line of the crossing, and that "it seemed to loom up all at once." No witness at or about the scene of the accident testified that the approaching street car was seen or discovered until it was within 10 or 25 feet of the crossing.

In considering what the plaintiff either as matter of law or fact must be held to have seen, or was capable of seeing what is claimed others saw, the similarity or dissimilarity of

the situation of the parties is an important factor. We think reasonable minds might well differ that the plaintiff, under all the conditions heretofore related had not the same means or opportunity of discovering the approaching street car from the east as did those who were on the east-bound street car, or at the scene of the accident, and looking towards the east and without anything to divert their attention.

Nor, in view that the east-bound street car was approaching the crossing at the same time the plaintiff was approaching it and slowing down and stopping to permit him to pass in front of it, and of all other attending circumstances, are we prepared to say that the plaintiff as matter of law was guilty of negligence in not looking to the east for approaching street cars before he testified he had looked; and, in view of the severity of the snowstorm and of the speed at which the street car from the east was traveling, it is not certain that, had he looked to the east when he entered the crossing, the street car approaching from the east then could have been seen by him.

Because of the storm and of the adverse road conditions, both the plaintiff and the company to avoid accidents and collisions were required to use care and vigilance in view of and commensurate with such conditions, and both required to use a greater degree of care than ordinarily would have been required in the absence of such conditions. On the record the jury, of course, could be permitted to find as matter of fact that the plaintiff was guilty of negligence and that such negligence as a direct and proximate cause contributed to the collision and injury; but we do not think such questions are so clear as to justify a determination of them by us as matters of law. Under the stated circumstances we think the questions were peculiarly of fact for the jury, and that the case is not to be ruled by what was determined and ruled in other cases based upon dissimilar facts and circumstances.

We therefore are of the opinion that the case ought to

have been let to the jury. The judgment is therefore reversed, and the cause remanded to the court below, with directions to reinstate the case and grant a new trial; costs to the appellant.

ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

FOLLAND, J. (dissenting).

I dissent. Being unable to concur in the result reached in the prevailing opinion, I feel under the necessity of stating my reasons.

The accident occurred at about 2 o'clock in the afternoon. At that time it was snowing. There were icy ruts 6 to 8 inches in depth in the street and which had been in the street for several days prior to the accident. Plaintiff was traveling north on the east side of Seventh East street driving a Chevrolet coupe in good condition, with chains on the wheels, efficient brakes, and automatic windshield wiper. The window on the driving or left side of the car was open. The glass on the opposite side was clear and free from snow. A lady was in the seat with plaintiff. Plaintiff testified: He was familiar with the street and knew of the existence of the double line of tracks on First South street at Seventh East street. That, as he reached the intersection, he noticed an east-bound street car traveling slowly eastward then about 125 to 150 feet away. He supposed it was slowing down to discharge passengers. He shifted into intermediate gear and started across the south-bound track traveling at a speed of 7 or 8 miles per hour. The east-bound car came to a full stop in order to give plaintiff the right of way. No passengers were discharged. Plaintiff stated that when he started to cross the south track he looked to the east and then proceeded straight across the tracks. He looked to the east through the clear glass on the east side of his car. He said his range of vision would be limited on account of the snowstorm to a distance of from 130 to 150 feet, but he saw no west-bound street car within the range of his vision. On cross-examination he said: "I looked at the east just as I was crossing the

first set of tracks I came to, as I was crossing the south tracks I looked to the east." This is the only time he claims to have looked in that direction. At the rate of speed he was traveling across the tracks he could have stopped his automobile within 2 or 3 feet. As the front of his automobile reached the north track he was struck by the west-bound street car. Plaintiff also testified on cross-examination:

"A. If the street car from the east had been 125 feet away from me I could have seen it.

"Q. You could? A. Yes, sir.

"Q. And by the time you traveled seven feet, the space between those tracks, and got up on that track, the north track, the street car was there, was it? A. Yes, sir.

"Q. And you didn't see it? A. I didn't see it.

"Q. Never seen it until the collision? A. Never knew what hit me at all."

When asked if he was not concerned with the east-bound car which was attracting his attention, he answered he "was not concerned with the east-bound car at all because it had stopped before I had started across the track."

The evidence was ample to support a finding of negligence on the part of defendant which would entitle plaintiff to recover if he were not himself guilty of contributory negligence proximately causing or contributing to the accident. The only question here is whether notwithstanding its negligence, the defendant is entitled to prevail because of plaintiff's negligence. It is contended that plaintiff was negligent in driving his automobile in front of an on-coming car without exercising ordinary care in the use of his faculties to apprise himself of his dangerous situation, and, even though he says he looked to the east, that he looked so carelessly or heedlessly that he did not see the car that could and should have been seen by him, the car actually having been seen by plaintiff's witnesses. As I view the evidence, there is sufficient to justify the court in saying, as a matter of law, that plaintiff was guilty of contributory negligence and that his negligence proximately caused or contributed to the accident.

The rule with respect to when negligence as the proximate cause of an accident should be determined by the court rather than the jury is stated in 22 R. C. L. p. 148, as follows:

"Thus where the facts of the particular case are disputable, and are of such character that different minds might reasonably draw different conclusions therefrom, a question of fact is presented properly determinable by the jury. But when the facts are undisputed and are susceptible of but one inference, the question is one of law for the court. While ordinarily the answers to those questions would naturally fall within the province of the jury, and, when made in their verdict, would be regarded as binding, yet where the facts are fairly incontrovertible the question of proximate or intervening cause is for the court. In this regard the question of proximate cause is not different from the question of negligence, or contributory negligence, in all of which, when the facts are conceded or found, the question is one of law. The province of the jury is to find the facts, but the facts being found or conceded, it is the duty of the court to declare the law applicable to such facts."

The evidence in this record is not disputed. It is in substantial harmony. There are no serious conflicts. The only variations are with respect to speed and distances and other similar details. This is to be expected where witnesses form judgments on such mattters from events which happen quickly.

The rule of law with respect to the duty of an automobilist approaching street car tracks in a city is fairly stated in the prevailing opinion.

This court has also, in other cases, clearly stated the rule of due care applicable to street car collisions. In *Gibson* v. *Utah Light & Traction Co.*, 46 Utah 562, 151 P. 76, 79, a case where a street car struck and injured a pedestrian it was said:

"We have also often defined the reciprocal duties imposed upon both the street car company and the ordinary traveler so far as those duties can in terms be defined. In that regard we have held that, while the street car company possesses a preferential right of passage along and over its street car tracks to which right all others must yield, yet that the duty of exercising ordinary care by both the company and the traveler who may be using the street is reciprocal;

that is, both the traveler and the street car operatives must exercise ordinary care as more particularly defined and stated in Spiking v. Railway & P. Co., 33 Utah 313, 93 P. 838, and in other cases decided since then."

In *Spiking* v. *Consolidated Ry. & Power Co.*, 33 Utah 313, 93 P. 838, 840, it was said:

"The deceased was required to exercise ordinary care for his own safety, and to that end make use of all of his faculties for seeing and hearing, no one questions."

In *Burgess* v. *Salt Lake City Railroad Co.*, 17 Utah 406, 53 P. 1013, 1014, involving a collision between a street car and a pedestrian, it was said:

"On the other hand, the evidence shows that the plaintiff incautiously and heedlessly stepped upon the track, where he received the injury. In the hurry of the moment, he attempted to cross the street and track without exercising that care which a man of ordinary prudence ought to exercise under like circumstances. Had he but used his senses, it is clear that he could have avoided the accident. This it was his duty to do, and, having failed so to do, he cannot be heard to complain of any injury that resulted from the failure which was the proximate cause thereof."

By the undisputed evidence, it seems to me plaintiff failed to exercise such care as a reasonably prudent person would exercise under similar circumstances, that his conduct amounted to negligence, and that his negligence was contemporaneous and concurrent, and therefore proximate. The physical facts show that he moved his automobile, traveling at a low rate of speed, in front of a fast moving street car, which, at the time he placed himself in a position of peril, was only a few feet away. The front wheels of the automobile had no sooner reached the south rail of the north track than it was struck by the left front of the street car. It is difficult for me to perceive how a driver of an automobile could get his automobile run into by a street car under the circumstances and conditions shown by this evidence without himself being guilty of contributory negligence. Had he used any of his faculties or senses of seeing or hearing, or paid any attention to traffic approaching

from his right he would have known of the presence of the street car. He could at any time prior to reaching a point 2 or 3 feet south of the north track have stopped his car and been outside of the zone of danger. He had shifted into intermediate gear and could have stopped his car within 2 or 3 feet. The front of plaintiff's automobile reached the zone of danger but a fraction of a second before the street car was at the same point. The negligence of both defendant and plaintiff was concurrent and proximate. Both were active and operative at the same time and place. It is claimed by plaintiff that he looked toward the east and saw no car. He admitted that even in the snowstorm he could see a distance of between 130 and 150 feet. He looked at the time he was about to cross the south rail of the south track but made no other effort to look or otherwise apprise himself of vehicular raffic approaching from his right, notwithstanding he knew, as he testified, that it was his duty to surrender the right of way to vehicles approaching on his right. It would seem, therefore, that he heedlessly and without exercising ordinary care drove his automobile directly into the path of the on-coming car. It is claimed for him, however, that he looked and thereby discharged whatever duty he had to make himself aware of traffic approaching from the right. But can it be said that he is free from negligence when he looked and did not see a car that was within the range of vision? Two of the witnesses saw the car one-half block away, or a distance of approximately 300 feet. Plaintiff testified he looked toward the east when he started across the south tracks. A witness, sitting in the east-bound car, looked and saw plaintiff as he drove onto the south track in front of the east-bound street car, and, at the very moment he saw the plaintiff drive on to the south track, he also plainly saw the west-bound car about 50 feet east of the automobile or from 10 to 25 feet east of the east line of the intersection. This was almost exactly the same time that plaintiff said he looked and saw nothing. Plaintiff crossed the tracks at a

speed of 7 or 8 miles an hour. The highest speed estimated for the west-bound street car was 35 to 40 miles an hour, which was approximately five times as fast as the automobile was traveling. The south rail of the south track is exactly 11 feet 8 inches distant from the south rail of the north track. Therefore, while the automobile traveled 12 feet, the street car, traveling five times as fast, would have been about 60 feet away when Barlow crossed the south rail of the south track. This computation, although only approximate, verifies the accuracy of the estimate of distance made by this witness. The evidence seems to me conclusive that the street car was well within plaintiff's range of vision and actually no more than approximately 50 or 60 feet east of his path when he says he looked and saw nothing. What others saw, he must be deemed to have been able to see. *Kent* v. *Ogden, L. & I. Ry. Co.*, 50 Utah 329, 167 P. 666.

"If the plaintiff looked, he must have seen it, or he must have looked very negligently and carelessly—in either case, he was necessarily, in the eyes of the law, guilty of contributory negligence, precluding his right to recover." Artz v. Chicago, R. I. & P. R. R. Co., 34 Iowa 153.

The language of Mr. Justice Straup speaking for the court in *Oswald* v. *Utah Light & Railway Co.*, supra, is particuarly applicable here. It is as follows:

"The plaintiff, however, testified that she looked, but looked so inattentively or purposely that she knew not whether the object seen by her was a street car or something else. The question, therefore, is not whether a prudent person before attempting to cross a street car track ordinarily was or was not required to look for approaching cars, or whether he ordinarily would or would not have done so, but whether a prudent person, in looking, under the circumstances testified to by plaintiff, and exercising the care in that particular that a prudent person ordinarily would exercise, would so have conducted or behaved himself that he, under the circumstances ordinarily would have seen no more than did plaintiff. * * *.

"May reasonable minds differ that such conduct was the ordinary conduct of a prudent person under the circumstances? We think not. * * *

"We think the nonsuit was properly granted on the ground of contributory negligence."

In the present case not only do the physical facts and conditions indisputably and definitely indicate that defendant's street car was within the range of vision of plaintiff at the time he claims to have looked, but this fact is proved by the testimony of the witness who actually saw the on-coming car and was able to estimate its speed. The witness was in no better position to see than was Barlow. He was farther away. He was within a closed vehicle and had to see the on-coming car through the car window. It must be apparent that the plaintiff looked, if he looked at all, in such an objectless and aimless manner that he did not see what was plainly visible.

While the testimony varied as to the character of the snowstorm, the weather condition is not of controlling importance when it is shown that others saw the car 300 feet or more away, and that the witness sitting in the east-bound car saw it approximately the very moment that Barlow says he looked and did not see it, and plaintiff said he could have seen it, notwithstanding the storm, if it had been within 125 feet at the time he looked. Plaintiff does not claim his attention was attracted by some other moving object which he must guard against. His testimony makes it clear that the east-bound car had come to a stop before he started to cross in front of it, and that he was no longer paying any attention to the east-bound car at the time he started to cross the tracks and looked toward the east. He knew at that time that he could safely take what time he needed to cross in front of the east-bound car which had stopped near the center of the intersection to yield him the right of way. Nor is there any serious question of plaintiff's vision having been obscured by reason of snow upon the windows of his car. He definitely stated that the window on the right-hand side through which he would look toward his right was clear, and that his automatic windshield wiper

was operating on the windshield in front of him. His only excuse for not seeing the car when he looked is that it was not there—apparently that it was coming at such a rate of speed that it was beyond his range of vision—but this is answered conclusively by the testimony of his witnesses and and by the physical facts.

It is suggested in the prevailing opinion that the snow on the windshield, and to some extent the upright at the corner of the body of the automobile at his right, obstructed plaintiff's view when looking in a northeasterly direction, and at the time he looked through the east window the street car might have been outside his range of vision, not because he could not see 50 feet (but because it was so close that a view of it was obscured by the snow on the windshield. This line of reasoning was not offered by plaintiff, nor is it even suggested by counsel in their briefs. Plaintiff's theory, if I can understand his language, is that, at the time he looked, the street car by reason of its speed had not yet reached a point within the field of vision which he estimated to be 130 to 150 feet. If, however, there is anything in this line of argument, it seems to me it but emphasizes the carelessness of plaintiff in going upon the track without knowing and apparently without caring what vehicles might have been approaching from his right. The testimony tends to indicate that, at the time plaintiff said he looked, the street car was approximately 50 or 60 feet away from him. It seems to me impossible under such a state of facts that the body post and portion of windshield covered with snow would have obstructed a view of the street car which is 44 feet in length when looked at from the position which plaintiff occupied in the seat of his car, and, if the front of the street car had been at that time much closer than 50 or 60 feet from the intersection of their paths and in such location that a view of it was obscured, if that were possible, by the corner post and windshield, it is obvious that plaintiff would have struck the car somewhere along the side. The mere fact that there

were icy ruts in the street and that he had reduced his speed to 7 or 8 miles an hour after having shifted into intermediate gear required that he pay some attention to possible on-coming vehicles approaching from his right, and if there was sufficient snow on his windshield to obscure a part of his ordinary field of vision, there was then a higher duty upon him than ordinary to inform himself, by the use of his senses, of traffic conditions at his right. The state law, Comp. Laws Utah 1917, § 3978, as amended by Laws Utah 1921, c. 83, provides that the operator of a vehicle shall give the right of way to an operator of a vehicle approaching him from his right at an intersecting or connecting highway. While before the passage of this law the duty upon operators of vehicles at intersections was probably reciprocal, now there is a positive duty placed upon the operator of a vehicle approaching or in an intersection to not only inform himself but to actually concede the right of way to other vehicles approaching from his right, and this rule has application where travelers approach the crossing so nearly at the same time and at such rates of speed that, if both proceeded, each without regard to the other, a collision or interference between them is reasonably to be apprehended, in which case it is the duty of the one approaching such point from the left to yield the right of way to the one approaching from the right. *Bryant* v. *Bingham Stage Line,* 60 Utah 299, 208 P. 541.

I agree with the statement in the prevailing opinion that, because of the storm and the adverse road conditions, both plaintiff and the company, to avoid accident and collision, were required to use care and vigilance in view of and commensurate with such conditions, and that both were required to use a greater degree of care than ordinarily would have been required in the absence of such conditions, but I cannot see how the application of this rule helps or tends to excuse the plaintiff, as it seems to me he failed to exercise such a degree of care as an ordinarily prudent person would have exercised even under ordinary conditions,

and that he utterly failed to exercise such care as was required under the conditions then prevailing.

The following cases support the view that the plaintiff was guilty of contributory negligence as a matter of law, and that it was the duty of the trial court to direct a verdict for defendant on that ground: *Dempsey* v. *City Light & Traction Co.* (Mo. App.) 256 S. W. 155, wherein it was held the driver of an automobile while crossing the street and street car tracks reached a perilous situation when he first saw the car that struck him, though he could have seen it sooner, is guilty of contributory negligence unexcused by the negligence of the motorman running at high speed without warning signals. *Harris* v. *City of Seattle,* 118 Wash. 327, 203 P. 943, wherein an automobile driver failed to look until he was within the zone of danger. The street car could have been seen had he looked. He drove in front of an on-coming car. This was held negligence as a matter of law. Defendant was also negligent because of high speed and no warning. *Herrett* v. *Puget Sound Traction, Light & Power Co.,* 103 Wash. 103, 173 P. 1024, where the driver of the automobile could have seen the car, had he looked, in time to avoid injury. *Carney* v. *United Electric Rys. Co.* (R. I.) 129 A. 593, where the driver of an automobile did not look just before going into the place of danger where her machine was struck. The court said: "If she had used ordinary prudence in that regard, she could not have failed to see her peril, and could have avoided it." *Johncox* v. *New York State Railways,* 236 N. Y. 575, 142 N. E. 289, where the driver of an automobile looked as he entered the intersection, saw nothing, and drove at a speed of 7 or 8 miles per hour in front of a street car. *Colborne* v. *Detroit United Ry.,* 117 Mich. 139, 143 N. W. 32, 35, wherein it was held regarding plaintiff motorist that, "before passing to the strip of danger from his place of safety, where he had ample opportunity to observe without obstruction, it was his duty to assure and reassure himself 'that there is not a car

directly upon him, of which situation the fact that he is struck is conclusive proof.' "

*Willis* v. *Boston & N. St. Ry. Co.,* 202 Mass. 463, 89 N. E. 31. The driver of a team went on to the track in front of a rapidly approaching car in full sight. He said he looked and listened. It was held he did this so carelessly that he is in no better position than if he had not looked or listened at all.

CHERRY, C. J.

I concur in the views expressed by Mr. Justice FOLLAND in his dissenting opinion.